(No. 29554.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEO WOS, Plaintiff in Error.

*Opinion filed November 20, 1946.*

Leo Wos, *pro se.*

George F. Barrett, Attorney General, and William J. Tuohy, State's Attorney, of Chicago, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, and W. S. Miroslawski, all of Chicago, of counsel,) for the People.

Mr. Justice Murphy delivered the opinion of the court:

In October, 1932, an indictment was returned in the criminal court of Cook county which charged defendant, Leo Wos, with burglary and larceny. It contained a habitual criminal count in which it was alleged that Wos had been convicted of grand larceny in 1925 and had been committed to the State reformatory at Pontiac for a term of years not to exceed the maximum fixed by statute for said crime. On a trial the jury found Wos guilty of burglary in the manner and form as charged in the indictment and also found that he had theretofore been convicted of grand larceny and served a term in the State reformatory at Pontiac as a penalty for such offense.

The Habitual Criminal Act as in force at that time (Ill. Rev. Stat. 1931, chap. 38, par. 602) provided "that whenever any person having been convicted of either of the crimes of burglary, grand larceny, horse stealing, robbery, forgery or counterfeiting, shall thereafter be convicted of any one of such crimes committed after such first conviction, the punishment shall be imprisonment in the penitentiary for the full term provided by law for

such crime at the time of such last conviction thereof." The statutory penalty for burglary was imprisonment in the penitentiary for a term of years of not less than one or for life. A judgment on the verdict finding defendant guilty of burglary and larceny and of having been formerly convicted of grand larceny should have committed him to the penitentiary for life. However, the judgment spread on the records sentenced him to a term of one year to life. A *mittimus* was issued in accordance with the judgment and defendant was taken to the penitentiary to start serving his term. About fourteen months thereafter the court, on motion of the State's Attorney, entered a *nunc pro tunc* order, the pertinent part of which is as follows: "It appearing to the court that the record as erroneously written up by the clerk showed that the defendant was sentenced to the penitentiary at Joliet for a term of one year to life, whereas in truth and in fact the defendant was sentenced to the penitentiary at Joliet for the term of his natural life, * * * and the court having examined the records in the above cause, including the indictment and the verdict of the jury and the minutes of the trial court, kept by him and made by him in his own handwriting at the time of the trial of said cause and it appearing from such examination that the sentence entered on February 1, 1933, was that the defendant be sentenced to the penitentiary at Joliet for the term of his natural life and that the defendant was not sentenced to the penitentiary at Joliet for a term of one year to life as is erroneously written up by the clerk of the criminal court." The order directed the correction of the record to make it read that the defendant was sentenced to the penitentiary for the term of his natural life. An amended *mittimus* was issued in accord with the corrected judgment.

In August, 1940, defendant moved the court to vacate the *nunc pro tunc* order of March 14, 1934. It was alleged that he was being held in the penitentiary under the

amended *mittimus* which committed him to prison for life. The motion was denied and defendant brings the cause here for review. It is submitted on the common-law record.

Defendant contends the original judgment committing him to the penitentiary for one year to life was the judgment of the court and, although erroneous, the court had no power to correct it by *nunc pro tunc* order of March 14, 1934. It will be noted that if defendant's contention was sustained he would remain in the penitentiary under the *mittimus* issued in the first judgment, that is, to serve the term of one year to life. The difference between the penalties imposed by the two judgments would lie in the fact of the possibility of an earlier parole under the first judgment.

A record in a criminal case may be amended by a *nunc pro tunc* order to correct clerical errors and to make the record speak the truth. (*Hubbard* v. *People,* 197 Ill. 15.) Such an order cannot be employed to correct a judicial error. Within proper limitations a record in a criminal case may be amended either before or after the expiration of the statutory period of thirty days during which period the record is under the control of the court. (*People* v. *Miller,* 256 Ill. 88; *Knefel* v. *People,* 187 Ill. 212; *Gore* v. *People,* 162 Ill. 259.) The law requires that the amendment must be based upon some official or *quasi*-official note or memorandum or memorial paper remaining in the files of the case, or upon the records of the court. It cannot rest upon the recollection of the judge who tried the case or the memory of someone present, nor can it be granted on *ex parte* affidavits or testimony occurring after the order was entered. (*Hubbard* v. *People,* 197 Ill. 15; *Dreyer* v. *People,* 188 Ill. 40; *Dougherty* v. *People,* 118 Ill. 160.) The fact that a defendant has entered the penitentiary and commenced the execution of the judgment is no obstacle to the correction of the record by *nunc pro tunc* order, provided the essentials for such an exercise of jurisdiction are

present. In *People ex rel. Fensky* v. *Leinecke,* 290 Ill. 560, reference was made to the general rule that a court retains jurisdiction of a judgment during the term at which it was rendered and that, during such period, for proper cause the court has jurisdiction to vacate the judgment, but in criminal cases the judgment cannot be vacated or changed after the prisoner has begun serving his sentence. In discussion of the facts of the particular case it was said: "The relator was serving his sentence at the time of the amendment of the judgment and *mittimus,* and the amendment was after the term at which he was convicted. There was, however, no change in the judgment, and the amendment consisted merely in amplifying the language of a judgment that was not void or entered without jurisdiction."

Defendant's contention on this branch of the case raises but one question to which the foregoing rules need to be applied. It is urged that the original judgment determined the period of imprisonment and the *nunc pro tunc* order was a redetermination of that question which resulted in an increase of the penalty. There is a difference between the rendition of a judgment and the entering of it on the records. The law which prescribes the duties of the judge and clerk of the criminal court makes it the function of the judge to pronounce sentence and the duty of the clerk to preserve the judge's determination by entering it on the record. The record is the evidence of the judge's decision. If the error appearing in the record relates to something the court did not consider and pass on, or, having considered it, arrived at an erroneous determination, then it is a judicial error and cannot be corrected by a *nunc pro tunc* order. It refers to an error of law that may be reviewed by writ of error. (*People* v. *Sprague,* 371 Ill. 627.) Conversely, if the error was produced by the clerical error of the clerk or by his failure to make the record speak the truth, then it may be corrected by *nunc pro tunc* order.

Our scope of inquiry is limited to the common-law record and such record imports verity. (*People* v. *Leinecke,* 290 Ill. 560.) The facts recited in the order indicate that the trial judge kept a docket in which he entered the sentence imposed. The sentence thus entered in the judge's docket was in accord with the verdict of the jury and for purposes here the record so made must be taken as conclusive of that fact. This being true, the error appearing in the record as extended by the clerk was an error committed by the clerk. He failed to make the record speak the court's determination of the penalty imposed. It was within the power of the court to correct the record by a *nunc pro tunc* order.

It is further contended that the order is void for the reason that defendant had no notice of its entry. The only reference in the record of notice to defendant is the following which appears in the *nunc pro tunc* order: "And it appearing to the court that notice of motion has been given Peter C. DeYoung, attorney for the defendant Leo Wos." It is contended on behalf of the People that notice to the attorney was notice to the defendant.

The authorities support the proposition that an attorney's relation to his client ceases upon the rendition of judgment and satisfaction thereof, unless there are special arrangements or circumstances showing a continuation of the relationship. In 6 C.J., page 672, sec. 184, it is said: "In the absence of disturbing events, the employment of an attorney continues as long as the suit or business upon which he is engaged is pending, and ordinarily comes to an end with the completion of the special task for which the attorney was employed. It is always a presumption that an attorney is employed to conduct the litigation to judgment, and no further; the relation of attorney and client and the general powers of the attorney cease upon the rendition and entering of the judgment."

The presumption in this case is that the relationship of attorney and client terminated when defendant was committed to the penitentiary and notice to him would not be binding on the defendant.

In 16 C.J., sec. 3114, it is said that a record cannot be amended or corrected by the court to conform to the facts after the term of court has passed, except upon giving notice to the defendant.

It may be argued that the only purpose of the *nunc pro tunc* order was to make the record speak a fact which defendant already knew. Such contention is beside the point, for on the question of the necessity of notice we look to the substantial rights the defendant might have in resisting the application for such an order. As pointed out, the power to issue such an order is dependent upon the contents of the record or *quasi* record of the court. It is conceivable that the existence or nonexistence of such records or their interpretation might raise a question concerning the power of the court to enter such an order. It would be a bad practice to permit the changing of judgment records in a material matter, as is involved in this case, without requiring that notice be given the defendant. Since the *nunc pro tunc* order of March 14, 1934, was entered without notice to the defendant, it was a nullity and the amendment to the original judgment was unauthorized.

For the reasons assigned, the order of the criminal court of Cook county is reversed and the cause remanded, with directions to enter an order vacating the *nunc pro tunc* order of March 14, 1934.

*Reversed and remanded, with directions.*