UNITED STATES of America ex rel.
Joseph KACHINSKI, Appellant,

v.

A. C. CAVELL, Superintendent, State Cor-
rectional Institution, at Rockview.

No. 18550.

United States Court of Appeals,
Third Circuit.

Argued Sept. 23, 1971.

Decided Dec. 7, 1971.

Gibbons, Circuit Judge, dissented
and filed opinion.

Joyce Ullman, Philadelphia, Pa., for
appellant.

Paul R. Mazzoni, Dist. Atty., Scran-
ton, Pa., for appellee.

Before VAN DUSEN, ALDISERT
and GIBBONS, Circuit Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from a district court
order denying, after oral argument, a
petition for a writ of habeas corpus
filed by relator, who had been convicted
by a state court jury in June 1966 of
larceny of a motor vehicle, operating a
motor vehicle without the consent of the
owner, larceny of a license plate, and
larceny of gasoline on or about July 31,
1965. See United States ex rel. Kachin-
ski v. Cavell, 311 F.Supp. 827 (M.D.Pa.
1969).

James Piazza had entered pleas of
guilty in the spring of 1965 to three in-
dictments charging him with unrelated
offenses,[1] at which time he had been
represented by the same attorney who
represented relator in the above-de-
scribed state criminal court proceedings.

---

1. Drag racing, operating a motor vehicle without a license and while his license was suspended.

On August 6, 1965, he received an 18-month sentence from which he was paroled in December 1965.[2]

At relator's first trial in February 1966, which was terminated due to the inability of the jury to reach a verdict, Piazza repudiated a statement that he had given to the police that relator had been the driver of the vehicle stolen on July 31, 1965, and committed at that time the other crimes described above. At his second trial in June 1966, Piazza testified that he had witnessed relator driving the car which had been stolen on July 31, 1965, and that relator had admitted, in conversation with Piazza, to stealing the car.

Relator contends that, under the above circumstances, a conflict of interest on the part of his attorney existed at the time of his trial which denied him the effective assistance of counsel, even though the representation of Piazza was in a prior, unrelated case. For the following reasons, we have concluded that the record does not show any conflict of interest existing at the time of relator's trials in 1966 which denied relator the effective assistance of counsel required by the Sixth and Fourteenth Amendments, see Walker v. United States, 422 F.2d 374 (3d Cir. 1970); United States ex rel. Small v. Rundle, 442 F.2d 235 (3d Cir. 1971), making clear that relator has the burden of showing an actual conflict of interest: [3]

A. Relator's attorney represented Piazza for an unrelated offense at a different term of court and there is nothing to show that the relationship continued after the sentencing proceeding in August 1965.[4] Although the Federal and Pennsylvania precedents do not make clear the responsibility of a defense attorney after his client has been sentenced and later placed on parole (in this case after December 1965), the A. B.A. Standards on The Prosecution and Defense Function provide (§ 8.5) that ". . . appellate counsel is not obliged to represent the defendant in a post-conviction proceeding unless he has agreed to do so." Also, the Illinois Supreme Court stated the rule as follows

---

2. In April 1967, Piazza was released from the terms of his parole.

3. This conclusion has been reached by at least two other Circuits in comparable factual situations where the representation by counsel of a witness was in a prior, unrelated case, see Harrison v. United States, 387 F.2d 614 (5th Cir. 1968); Olshen v. McMann, 378 F.2d 993 (2nd Cir. 1967); cf. United States ex rel. Hussey v. LaVallee, 428 F.2d 457, 458 (2nd Cir. 1970), cert. denied, 400 U.S. 995, 91 S.Ct. 469, 27 L.Ed.2d 444 (1971); Fryar v. United States, 404 F.2d 1071, 1074 (10th Cir. 1968), cert. denied, 395 U.S. 964, 89 S.Ct. 2109, 23 L.Ed.2d 751 (1969); Lugo v. United States, 350 F.2d 858, 859 (9th Cir. 1965). The earlier Fifth Circuit case of Porter v. United States, 298 F.2d 461 (5th Cir. 1962), relied on by relator, is distinguishable in several respects, including the current representation of a police officer by counsel for the defendant at the time of defendant's trial when the police officer had tried to extort money from defendant and to secure $500. for persuading a witness not to testify against the defendant.

4. The district court used the following language in note 1 of its opinion (311 F.Supp. at 829) and there is nothing in the record to show that it is clearly erroneous:

"The fact that counsel never formally withdrew as Attorney for Piazza after he pleaded guilty on August 6, 1965, is not sufficient to establish a conflict of interest in this case. There is nothing to show that Attorney Lenczycka continued to act as Piazza's Attorney after August, 1965."

Although the petition for a writ of habeas corpus alleges in paragraph 12(g) that "In December of 1965 . . . ., James Piazza, still represented by [relator's counsel], was granted parole . . . .", paragraph 12(g) of the answer to this petition reads:

"On December 22, 1965, the said James Piazza was paroled by the Court of Lackawanna County. There is no indication in the records that Attorney Leona Lenczycka did or did not represent him at that time."

in People v. Wos, 395 Ill. 172, 69 N.E.2d 858, 861 (1946):

> "The authorities support the proposition that an attorney's relation to his client ceases upon the rendition of judgment and satisfaction thereof, unless there are special arrangements or circumstances showing a continuation of the relationship. In 6 C.J., page 672, § 184, 7 C.J.S. Attorney and Client § 108, it is said: 'In the absence of disturbing events, the employment of an attorney continues as long as the suit or business upon which he is engaged is pending, and ordinarily comes to an end with the completion of the special task for which the attorney was employed. It is always a presumption that an attorney is employed to conduct the litigation to judgment, and no further; the relation of attorney and client and the general powers of the attorney cease upon the rendition and entering of the judgment.'

> "The presumption in this case is that the relationship of attorney and client terminated when defendant was committed to the penitentiary and notice to him would not be binding on the defendant."

Similarly, in Flores v. State, 79 N.M. 47, 439 P.2d 565 (1968), the court said at page 567:

> "Generally, the attorney-client relationship ceases when the contemplated legal service has been performed."

It may well be that the attorney-client relationship is recreated if facts which may constitute a violation of parole take place, but there is no evidence of such a situation in this record.[5]

B. Since Piazza was not sentenced and placed on parole until after the events of July 31, 1965, any participation by him in those events could not have been a violation of his parole status existing at the time of the 1966 trials. See 61 P.S. §§ 331.21 and 314; Commonwealth ex rel. Wright v. Maroney, 201 Pa.Super. 118, 191 A.2d 866 (1963); United States ex rel. Lyle v. Maroney, 260 F.Supp. 689 (W.D.Pa. 1966), and cases there cited.

■ C. Although relator now contends that his attorney knew Piazza was subject to indictment and conviction for the events of July 31, 1965, the fact that the attorney cross-examined Piazza vigorously as to his being accused of the same charges (138a–139a) indicates the full use of legal talents on relator's behalf,[6] and does not necessarily indicate the attorney's belief in Piazza's having been so accused or in his being guilty of the July 31, 1965, offenses.

The December 17, 1969, district court order will be affirmed.[7]

GIBBONS, Circuit Judge (dissenting).

Kachinski was charged with stealing a motor vehicle on or about July 31, 1965, and related offenses. At his first trial in February, 1966, at which the jurors were deadlocked, a key Commonwealth witness, Piazza, refused to testify against him although he had previously given contradictory statements to the police which had linked Kachinski to the crimes. At the second trial in June, 1966, at which Kachinski was convicted, Piazza testified that he had witnessed Kachinski in the stolen car and that Ka-

---

5. Also there is no evidence in the record (as opposed to statements in relator's brief) that the state criminal court "requires the presence of the parolee's [former] attorney should a problem of parole status arise," (see page 584 of dissenting opinion).

6. Piazza waived any attorney-client privilege by making a statement to the police about what he knew of the crimes for which relator was convicted, so that there was nothing to prevent the attorney from questioning Piazza on behalf of relator. See Olshen v. McMann, *supra* (note 3), 378 F.2d at 994.

7. Relator did not raise before the district court (122a–123a) his claims that Mike Macedonia and Richard Murdock should have been produced by his attorney as witnesses on his behalf at his 1966 trials.

chinski had admitted his participation in the crime.

This same Piazza had pleaded guilty in the Spring of 1965 to indictments charging him with criminal offenses unrelated to the crimes for which Kachinski was convicted. Piazza had received an 18 month sentence on August 6, 1965, and he was paroled in December, 1965. In April, 1967, Piazza was released from the terms of his parole. Up until the time of his sentencing on August 6, 1965, Piazza had been represented by the same attorney who represented Kachinski at both trials. After that date, to and including the date of the release from parole, that same attorney continued as Piazza's attorney of record. There is no evidence showing that Kachinski was aware of this contemporaneous representation.

After Kachinski's conviction, his alleged accomplice Murdock, who was unavailable at the time of Kachinski's trial, was apprehended and tried. At Murdock's trial, he testified that it was Piazza, and not Kachinski, who was the other perpetrator of the July 31, 1965, crimes. On the basis of this testimony, Kachinski filed a petition for a writ of habeas corpus. His petition was denied by the district court and he took this appeal. His petition should have been granted.

During the time that Kachinski's attorney represented him at his first and second trials, Piazza had not been formally charged with participating in any of the July 31, 1965, crimes. Nonetheless, Piazza had in fact been linked with these crimes because he had been questioned by the police as a possible suspect. It was this questioning which led Piazza to implicate Kachinski. Kachinski's attorney was cognizant of these facts because she cross-examined Piazza as to his motives for testifying.

Moreover, these events all took place while she was still noted as Piazza's attorney of record and, consequently, still owed him at least a duty of loyalty. Piazza's incriminatory testimony was given while he was released on county parole. See 61 P.S. § 314. According to the brief of the relator, in such parole re-incarceration or freedom is controlled by the sentencing court and this court requires the presence of the parolee's attorney should a problem of parole status arise. The July 31, 1965 offenses probably could not be the basis for revocation of parole, since they took place prior to Piazza's release on parole. But in a revocation proceeding pursuant to 61 P.S. § 314 based on other misconduct the July 31, 1965 offenses could be taken into account in determining if Piazza would be benefited by continuing liberty. Thus the attorney's continuing duty of loyalty to Piazza, as evidenced by her continuing as attorney of record, placed her in a position of possible dual representation. I cannot accept the proposition in footnote 6 of the majority opinion that Piazza, by giving a possibly false statement to the police, waived his attorney-client privilege or that he thereby released his attorney from her duty of loyalty.

Although it is not apparent that any actual harm resulted to Kachinski, there is no need to prove such prejudice or harm since the mere presence of a conflict of interest without the knowledge and consent of a defendant taints the proceedings. See Walker v. United States, 422 F.2d 374, 375 (3d Cir. 1970); United States ex rel. Miller v. Myers, 253 F.Supp. 55, 57 (E.D.Pa. 1966). This is especially so here where the attorney for Kachinski was at the same time, without the knowledge of the relator, the attorney of record for a key Commonwealth witness who himself was questioned as a suspect of the crimes. At least until such time as counsel withdrew of record, a duty of loyalty existed toward Piazza, which duty resulted in a conflict of interest in representing Kachinski.

I would reverse the order of the district court.