J-S01043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JOHN JUNIOR TAYLOR, | : | |
| | : | |
| Appellant | : | No. 749 MDA 2016 |

Appeal from the PCRA Order April 6, 2016
in the Court of Common Pleas of Dauphin County,
Criminal Division, No(s):  CP-22-CR-0000444-2006

BEFORE:  GANTMAN, P.J., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　　　　**FILED MAY 10, 2017**

John Junior Taylor ("Taylor") appeals from the Order dismissing his Petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its Opinion, the PCRA court set forth the relevant factual and procedural background of this case, which we adopt for the purpose of this appeal.  **See** PCRA Court Opinion, 4/6/16, at 1-3.[2]

Following the second hearing, the PCRA court dismissed Taylor's Petition on April 6, 2016.  Taylor thereafter filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] The Pennsylvania Supreme Court denied Taylor's Petition for allowance of appeal on November 2, 2011.  **See Commonwealth v. Taylor**, 32 A.3d 1278 (Pa. 2011).

On appeal, Taylor raises the following issues for our review:

1. Whether [Taylor] was denied his constitutionally guaranteed right to the effective assistance of counsel when his trial counsel continued to represent him[,] even though [trial counsel] was burdened by an actual conflict of interest[,] as he simultaneously[,] or nearly simultaneously[,] represented the snitch against him?

2. Whether trial counsel could resolve or cure the conflict ten days before trial by simply ending his representation of [the] Commonwealth's main witness[, who was trial counsel's] current client?

Brief for Appellant at 4.

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

As Taylor's issues are related, we will address them together. In his first issue, Taylor contends that he was denied effective assistance because his trial counsel, Arthur Gutkin, Esquire ("Attorney Gutkin"), also represented a key prosecution witness, Thomas Taylor ("Thomas"), for approximately three months prior to Taylor's trial. Brief for Appellant at 24-25. Taylor asserts that Attorney Gutkin failed to conduct a rigorous cross-

- 2 -

examination of Thomas at trial, and stopped his questioning of Thomas in order to protect confidential information that Attorney Gutkin had obtained during his representation of Thomas. *Id*. at 25-27. Tayler claims that, even though Attorney Gutkin's representation of Thomas ended ten days prior to Taylor's trial, an actual conflict of interest existed, as Attorney Gutkin had an ongoing duty to protect Thomas's rights. *Id*. at 27-28. Taylor argues that, because an actual conflict of interest existed, this court must presume that he was prejudiced. *Id*. at 29.

In his second issue, Taylor contends that Attorney Gutkin was actively representing Thomas while Thomas was seeking leniency from the district attorney's office on pending revocation proceedings,[3] by testifying that Taylor had made a jailhouse confession to Thomas regarding the murder charges pending against Taylor. *Id*. at 30-31. Taylor asserts that Attorney Gutkin had confidential information that he could have used to discredit Thomas on cross-examination, but chose not to use it in order to protect his law license. *Id*. at 35. Taylor claims that he did not waive the conflict of interest, and was unaware of the letters that Thomas had sent to the district attorney's office, the statement made by Thomas regarding Taylor's confession, the federal charges pending against Thomas, or the full extent of the relationship between Attorney Gutkin and Thomas "that had lasted decades." *Id*. at 36.

---

[3] The record is unclear as to whether Thomas's revocation proceedings involved parole or probation violations.

In its well-reasoned Opinion, the PCRA court addressed Taylor's issues, set forth the relevant law, and determined that Taylor failed to establish that Attorney Gutkin's assistance had been ineffective. *See* PCRA Court Opinion, 4/6/16, at 3-11. As stated by the PCRA court,

> [a]lthough we are familiar with the fact that Attorney Gutkin had represented [Thomas] during his federal difficulties, and in matters preceding that, we are unaware of any circumstance(s) that affected the cross-examination at trial. Our careful and critical review of the record leads us to the conclusion that the cross-examination was extensive and thorough. The attacks were pointed and in no way appeared to be mamby-pamby.

*Id*. at 7.

Additionally, the PCRA court determined that, although an actual conflict of interest had existed during the critical stages of Attorney Gutkin's representation of Taylor, the conflict had been resolved, without any prejudice to Taylor's case. *See id*. at 11.

Viewing the findings of the PCRA court and the evidence of record in the light most favorable to the Commonwealth, as the prevailing party at the PCRA level, we are constrained to affirm the PCRA court's determination that Taylor failed to meet his burden of establishing ineffective assistance by Attorney Gutkin. Taylor claims that Attorney Gutkin had confidential information that he could have used to discredit Thomas on cross-examination, and that Attorney Gutkin chose not to use such information in order to protect his law license. However, Taylor failed to identify any such confidential information. Although the PCRA court conducted two

- 4 -

evidentiary hearings, Taylor failed to call Attorney Gutkin as a witness at either hearing. Thus, there is no evidence of record that Attorney Gutkin did, in fact, have further information that could have been used to discredit Thomas.

Moreover, based on our independent review of the record, we are compelled to agree with the PCRA court that Attorney Gutkin's cross-examination of Thomas was both vigorous and zealous. Attorney Gutkin sought to diminish Thomas's credibility by questioning him regarding his prior convictions for crimes of dishonesty. **See** N.T. (Vol. 1), 5/24/07, at 23-24 (wherein Attorney Gutkin asked Thomas whether he realized that each of the eight or more crimes for which he had been convicted "is a crime which bears upon your ability to tell the truth."). Attorney Gutkin further sought to diminish Thomas's credibility by questioning him regarding his pattern of gaining the confidences of other inmates, finding out about their cases, and then providing false information about the inmates to law enforcement authorities in order to get charges against Thomas dismissed. **See id**. at 25-26 (wherein Attorney Gutkin repeatedly questioned Thomas about his practice of making up false stories about other inmates for the purpose of getting charges against himself dismissed). Additionally, Attorney Gutkin sought to diminish Thomas's credibility by questioning him regarding his false representations to other inmates that he was a licensed paralegal working for various attorneys, including Attorney Gutkin. **See id**.

at 51-52. After Thomas denied that he had made any such representations, Attorney Gutkin called several rebuttal witnesses to impeach Thomas on this issue. *See id*. (Vol. 4) at 74-75 (wherein fellow inmate Paris King ("King") testified that Thomas had held himself out as a licensed paralegal working for Attorney Gutkin, and that Thomas had helped King prepare a brief for his case in exchange for items from the prison commissary); *id*. at 76-77 (wherein fellow inmate David Welker ("Welker") testified that Thomas had told him that he was a paralegal, Welker had witnessed Thomas performing legal work for other inmates, and that Thomas had offered to perform legal work for Welker); *id*. at 78-79 (wherein fellow inmate Larry Roberts ("Roberts") testified that Thomas told Roberts that he was a paralegal and that he had performed paralegal work for his sister's law firm, Roberts had witnessed Thomas performing legal work for other inmates, including Taylor, and that Roberts had seen Thomas with discovery from Taylor's case). Finally, Attorney Gutkin questioned Thomas regarding his assertions, in one of the letters he sent to the district attorney's office, that Thomas could have Attorney Gutkin removed from Taylor's case. *See id*. at 32-34 (wherein Thomas conceded that, in the letter, he had represented that he was going to try to have Attorney Gutkin "eliminated" from Taylor's case because of the problem it presented for Thomas's testimony).

As noted by the PCRA court, in order to prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate (1)

that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. ***See Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016). Here, Taylor failed to show how Attorney Gutkin's chosen strategy for cross-examining Thomas lacked a reasonable basis, or prove that an alternative strategy offered a potential for success substantially greater than the course actually pursued by Attorney Gutkin. ***See id***. Further, Taylor failed to demonstrate that there is a reasonable probability that the outcome of his trial would have been different but for Attorney Gutkin's action or inaction. ***See id***. Thus, based on the record before us, Taylor failed to establish that no reasonable basis existed for Attorney Gutkin's cross-examination of Thomas, or that Attorney Gutkin's cross-examination of Thomas caused any prejudice to Taylor's case.

Additionally, based on our independent review of the record, we are compelled to agree with the PCRA court's determination that, by the time of Taylor's trial, any potential conflict of interest had been resolved because Attorney Gutkin had withdrawn from his representation in the unrelated federal court action pending against Thomas.

Because the PCRA court's determinations are supported by the evidence of record and are free of legal error, we affirm its Order dismissing Taylor's Petition.

Order affirmed.

J-S01043-17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2017

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
:
vs. : NO. 2006-CR-444
:
:
JOHN JUNIOR TAYLOR :

MEMORANDUM OPINION

This case arises out of the events that took place on September 8, 2005 in the Allison Hill section of Harrisburg, Pennsylvania. Police officers responded to reports of shots being fired in the late hours of the night in question. Upon arriving on the scene, the victim, Antoine Baldwin, was discovered lying outside of his vehicle with a gunshot wound to his head. [N.T., 5-21-07, pp. 8-10]. The evidence at trial revealed that there was a drug dispute/"ripoff" and Defendant had been hiding in an alley, waiting for Baldwin to emerge. Defendant shot Baldwin as he was entering his car. [N.T., 5-21-07, pp. 16-18].

Defendant was arrested on December 8, 2005 and his preliminary hearing was held in February, 2006. Thereafter, while housed at Dauphin County Prison (DCP), Defendant came into contact with one Thomas Taylor,[1] a fellow inmate. Through conversations between the two, Thomas convinced Defendant that he should hire Arthur Gutkin, Esq., the attorney who was representing himself in his criminal matters, as his attorney. Defendant did so. On January 30, 2007, Arthur Gutkin entered his appearance on behalf of Defendant. [N.T., 2-26-14, p. 20]. Interestingly, the week before, Thomas Taylor had given a formal statement against Defendant. At this point in time, Attorney Gutkin had already had his appearance entered in Federal Court representing Thomas Taylor.

---

[1] No relation to Defendant.

1

Three letters were sent to the District Attorney's Office (dated 1-4-07, officially stamped received by the District Attorney's Office 2-4-07; dated 1-8-07, stamped received 1-8-07; dated 2-25-07, no stamp, but was stipulated as received by the District Attorney's Office). Attorney Gutkin filed a motion to withdraw as counsel for Thomas Taylor on May 10, 2007. The motion was granted on May 14, 2007. On May 21, 2007, jury selection commenced in the case herein.

On May 25, 2007, Defendant was convicted of first-degree murder, and was sentenced to life imprisonment on June 20, 2007. A timely motion for a new trial based upon trial issues and after-discovered evidence was denied on November 9, 2007. Defendant filed his notice of appeal on November 19, 2007. On December 14, 2009, the Superior Court found no error and affirmed Defendant's judgment of sentence.

Defendant filed a motion for post-conviction relief on November 6, 2012. Initially, on November 16, 2012, Christopher Wilson, Esq., was appointed to represent Defendant. Attorney Wilson asked to withdraw on April 8, 2013. On May 16, 2013, this Court granted Attorney Wilson's request to withdraw and, in the same order appointed The McShane Firm to represent Defendant. Thereafter, an amended petition for post-conviction relief was filed and hearings were held on November 6, 2013 and February 26, 2014. Following administrative actions between defense counsel and then-President Judge Hoover, additional pleadings followed and this opinion and order therefrom.

The issue before the Court is to determine if a conflict of interest existed that affected or could have affected the unfettered right to counsel afforded to Defendant.

We note, before we begin our analysis, that neither party called Attorney Arthur Gutkin to testify in order to either substantiate or refute any factual claims by Defendant. Further, Attorney Gutkin was unable to respond to the nature and degree of his own examination of the

2

witness, Thomas Taylor. This Court did hear from Thomas Taylor, but carefully weighted his veracity. We also heard from Defendant and found his uncontroverted testimony to be truthful and believable. However, the testimony of John Baer, Deputy District Attorney, illuminated the nature and circumstances leading to and during trial of the legal and personal relationship between Defendant, defense counsel, and the Commonwealth witness.

The general rule involving ineffectiveness claims in PCRA matters is, to meet this burden, the claimant must plead and prove that:

> 1)The issue underlying his claim of ineffectiveness is of arguable merit; 2) the course chosen by counsel had no reasonable basis designed to serve his interests; and 3) he suffered prejudice as a result of counsel's ineffectiveness.

*Commonwealth v. Pierce,* 515 Pa. 153, 158—160, 527 A.2d 973, 975-76 (1987); *Commonwealth v. Buehl,* 510 Pa. 363, 378-79, 508 A.2d 1167, 1174-75 (1986).

In matters of conflict of interests claims, the prongs are somewhat different. It is necessary for a defendant to "demonstrate that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his laywer's performance.'" *Buehl, supra,* quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 350 (1980). *See also Commonwealth v. Smith,* 380 Pa. Super. 619, 552 A.2d 1053 (1988); *In Interest of Saladin,* 359 Pa. Super. 326, 331, 518 A.2d 1258, 1261 (1986). The showing of a mere possibility of a conflict of interest "is insufficient to impugn a criminal conviction." *Cuyler, supra,* at 350. When the claim of ineffective assistance of counsel is based upon an alleged conflict of interest, however, prejudice will be presumed where counsel is shown to have been burdened by an actual conflict of interest. *See, Buehl, supra,* 510 Pa. at 379, 508 A.2d at 1175; *Smith, supra,* 380 Pa. Super. at 629-630, 552 A.2d at 1059.

3

The timeline herein shows that defense counsel had represented Commonwealth witness Thomas Taylor in numerous matters prior to 2007. The first letter sent from witness Thomas Taylor was dated January 4, 2007, offering his assistance to the District Attorney's Office. On January 30, 2007, Attorney Gutkin entered his appearance on behalf of Defendant, John Taylor. We do not know the date when Attorney Gutkin was *first* made aware of the various letters sent by Thomas Taylor, all of which were sent in the month of January. At some point prior to jury selection, Attorney Gutkin discussed the "conflict" with Attorney Samuel Stretton to receive advice as to how to proceed. He then discussed these issues with Defendant John Taylor, as well as with witness Thomas Taylor. Weeks before his formal petition to withdraw (May 10, 2007) he received a waiver of conflict from witness Thomas Taylor and terminated his involvement on his behalf. Attorney Gutkin was released of his obligation of counsel to Thomas Taylor on May 14, 2007. Trial began on May 21, 2007.

Most cases involving conflict of interest of prior representation have all evidenced a completion of services and an appreciable time prior to the complainant's representation. Additionally, they also involve representation in two distinctly different matters.[2] Here, we do not have that distinction. From January 2007, until his withdrawal, Attorney Gutkin clearly was representing two masters of differing interests. The cross purpose of representing witness Thomas Taylor first needed to advance Federal defendant Thomas Taylor's cooperation in the conviction of Defendant herein John Taylor, all the while strategizing the discrediting of the

---

[2] *See* string of cases included in *Commonwealth v. Munson*, 419 Pa. Super. 238, 615 A.2d 343 (1992). These cases refer to a conflict where the witness and/or co-defendants were previously represented by defendant's counsel for some period of time prior to defendant's current charges. These cases indicate the witnesses and/or co-defendant's previous charges have been well resolved and unrelated to the matter then at bar. The representation of the witness and/or co-defendants have long been concluded. It is noted that the *Munson* Court commented "...it is s conceded that none of the cases are related. Further, no specific allegation has been made that counsel possessed confidential information as a result of prior representations which affected his ability to zealously and effectively cross-examine witnesses...." *Munson*, 419 Pa. Super. at 247, 615 A.2d at ___.

4

testimony of witness Thomas Taylor in order to seek absolving Defendant John Taylor from his criminal homicide charges.

"The full meaning of 'actual conflict of interest' is somewhat broader; such a conflict is evidenced whenever during the course of representation, the interests of appellant – and the interests of another client towards whom counsel bears obligations – diverge with respect to a material factual or legal issue or to a course of action. *See Sullivan v. Cuyler*, 723 F.3d 1077, 1086 (3rd Cir., 1983)." *Saladin, supra*, 359 Pa. Super. at 332, 518 A.2d at 1261 (1986). Clearly, during the time period in January through early May, Attorney Gutkin had his appearance entered for both the defendant herein as well as the federal defendant/state witness. The Commonwealth wishes to easily dismiss this time period as not being at actual trial. We do not believe this analysis is that easily ignored. There is no doubt that both clients were well into the critical stages of both of their respective prosecutions. In fact, what haunts this Court is an eerie analogy to the musical "Chicago," where a conspiracy of such a heinous nature lurks in the shadows. But we find no such nefarious evidence of such.

> We look to *Smith, supra*, for guidance of counsel's termination pre-trial.
>
> Here, at the time of appellant's trial, counsel was no longer representing Robert Smithson. Indeed, counsel withdrew from his representation of Smithson in May, 1985, a year and a half before appellant's trial. N.T. January 30, 1986 at 17, 24; N.T. December 1, 1986 at 75-76. Moreover, at trial, Smithson invoked his privilege against self-incrimination and refused to testify. Because the record clearly demonstrates that counsel was not actively representing conflicting interests, *See Commonwealth v. Buehl, supra; In re Saladin, supra*, appellant's claim that counsel was ineffective in continuing in his representation of appellant lacks arguable merit.

*Smith, supra*, 380 Pa. Super. at 630, 552 A.2d at 1059.

The concern is two-fold. Termination of representation occurred in *Saladin* over a year prior to trial. It did not have the "smell" of letters to the Commonwealth just a few months before

5

trial, while representation was jointly entered. Second, the witness did testify, willingly, with the outcome possibly affecting his own case. This Court cannot but find an actual conflict of interest during the critical stages of representation.

For the time being, we turn to look beyond the issue of actual conflict of interest. In *Cuyler, supra,* the United States Supreme Court established a minimum standard for effective assistance of counsel. Under *Cuyler,* an appellant's conviction must be overturned once he demonstrates that "an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348.

A study of the cross-examination conducted by Attorney Gutkin shows two opposing views. First, he begins by warning the jury that his license may be in jeopardy if he's not careful in his inquiries. Was this evidence that he will not be zealous? Or was it a trial tactic in order to diffuse the fact that the jury will learn of his joint representation and hold it against the defendant herein? Attorney Gutkin was never given the opportunity to explain. On the other hand, did this evidence reveal confidences he did not expose?

> As a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion. Of course, there may be cases where the absence of a reasonable strategy is uncontested, and there may be instances where trial counsel is deceased or unavailable for another reason. But this is not such a case. The ultimate focus of an ineffectiveness inquiry is always upon counsel, and to upon an alleged deficiency in the abstract. Furthermore, it is particularly problematic to render an appellate finding of per se unreasonableness in a case where the PCRA judge, whose decision was under review, discerned a reasonable strategy from the trial record alone and, for good measure, the PCRA judge also presided at trial.

*Commonwealth v. Colavita,* 606 Pa. 1, ___, 993 A.2d 874, 895 (2010).

In *United States v. Jeffers,* 520 F.2d 1256, 1264 (7th Cir. 1975) the Court states that "[i]n cases in which the alleged conflict of interest is based on the prior representation of a prosecution witness by defense counsel, the courts have examined the particular circumstances to determine

6

whether counsel's undivided loyalties reside with his current client." *See Castillo v. Estelle*, 504 F.2d 1243 (5th Cir. 1974) (reversing conviction where counsel had represented in civil litigation president of company which defendant allegedly robbed); *Brown v. United States*, 665 F.2d 271 (9th Cir. 1982); *United States v. Winkle*, 722 F.2d 605 (10th Cir. 1983). Although we are familiar with the fact that Attorney Gutkin had represented the witness during his federal difficulties, and in matters preceding that, we are unaware of any circumstance(s) that affected the cross-examination at trial. Our careful and critical review of the record leads to the conclusion that the cross-examination was extensive and thorough. The attacks were pointed and in no way appeared to be mamby-pamby.

However, must the actual harm or prejudice be identified? Aren't the introductory comments made to the witness alone evidencing sufficient reluctance to make the PCRA Court skeptical? The failure of the Commonwealth to present Attorney Gutkin, in light of the record, is troubling. "When the claim of ineffective assistance of counsel is based upon an alleged conflict of interest, however, prejudice will be presumed where counsel is shown to have been burdened by an actual conflict of interest. *See Commonwealth v. Buehl, supra*, 508 A.2d at 1175; *Commonwealth v. Smith*, 380 Pa. Super. 619, 629-630, 552 A.2d 1053, 1059 (1988)." *Commonwealth v. McCloy*, 393 Pa. Super. 217, 224, 574 A.2d 86, 90 (1990). Albeit the burden lies on the defendant. But once the record herein is presented, does the Commonwealth need to allay the fears? Counsel's remarks could also reflect the continuing burden of his actual conflict.[3]

---

[3] MR. GUTKIN: Hi, Tom. How long have we known each other, Tom?
THOMAS TAYLOR: Since the nineties. I believe.
Q: Mid-nineties, hasn't it been?
A: (no verbal response)
Q: Mid-nineties? You have to say yes or no.
A: Yes, sir.

7

Footnote 13 in *Jeffers, supra,* in its entirety reads as follows:

> The courts have frequently held that the existence of such a relationship, with the inherent attendant hesitancy of counsel to completely cross-examine a current client, creates a very real conflict of interest and requires a mistrial if the conflict is disclosed, or a new trial, if the conflict is discovered only later. *See Castillo v. Estelle,* 504 F.2d 1243 (5th Cir. 1974); *Porter v. United States,* 298 F.2d 461 (5th Cir. 1962); *Taylor v. United States,* 96 U.S.App.D.C. 379, 226 F.2d 337 (1955); *District of Columbia v. Scott,* 94 U.S.App.D.C. 227, 214 F.2d 860 (1954); *United States ex rel. Williamson v. LaVallee,* 282 F.Supp. 968 (E.D.N.Y. 1968); *United States ex rel. Miller v. Myers,* 253 F.Supp. 55 (E.D.Pa. 1966); *People v. Stoval,* 40 Ill.2d 109, 239 N.E.2d 441 (1968); *cf. Randazzo v. United States,* 339 F.2d 79 (5th Cir. 1964). *But see Weaver v. United States,* 263 F.2d 577 (8th Cir. 1959), *cert.denied,* 359 U.S. 1014, 79 S.Ct. 1154, 3 L.Ed.2d 1038; *Hayman v. United States,* 205 F.2d 891 (9th Cir. 1953), *cert. denied,* 349 U.S. 959, 75 S.Ct. 889, 99 L.Ed. 1282. In *Zurita v. United States, supra,* n.3, we ordered a remand for a hearing to determine exactly the nature of Cohen's on-going relationship, if any, with the robbed bank. We noted that "if attorney Cohen were shown to have actually represented the bank at a time when the bank's interest in petitioner's trial conflicted with that of petitioner, we would be presented with a situation so 'fraught with the dangers of prejudice,' that a new trial would be required." 410 F.2d at 489, *quoting People v. Stovall,* 40 Ill.2d 109, 113, 239 N.E.2d 441, 443 (1968). In his concurring opinion Judge Fairchild expressed the view that the district court should not set aside the conviction unless the evidence showed a "probability that the relationship between petitioner's retained counsel and the ack was sufficient to and did cause counsel to be ineffective in representing petitioner."

*Jeffers, supra,* 520 F.2d at 1256 n.13.

---

Q: You know, I told the jury in opening, and I have to tell you this; that I am under ethical restraint. Correct? You know what restraint is?

A: Yes, sir.

Q. And that restraint is: There is no issue, so that my license doesn't get in jeopardy for cross-examining you; that I am not allowed to ask you anything which I may know about you that nobody else knows about you. It is called confidential relationships. Do you understand that?

A: Yes, sir.

Q: And I will not violate that. I value my license too much to violate that. But I will ask you questions on things I do know about you, okay?

A: Fine.

Q: Anything you wrote to any person who is not associated with me, or to me, I have the right to know and I have the right to cross-examine you on. Do you understand that?

A: Yes, sir.

Q: Let's start off. First of all, would you agree that the person that referred John Taylor to me as a client was you?

A: Yes, sir.

{Notes of Testimony, Jury Trial, May 24, 2007, pp. 20-21]

While it is true that prejudice is presumed when counsel is burdened by an actual conflict of interest, this is so only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler, supra,* 446 U.S. at 350. So, before we can rest on the previous analysis, we must find, as a matter of fact, that counsel "actively" represented conflicting interests. The testimony at the hearing demonstrated that Attorney Gutkin realized the dilemma he faced, that he spoke with both individuals about the issue. Further, that he sought advice as to how to proceed from Attorney Samuel Stretton. He then sought to terminate his representation of witness Taylor and receive a waiver of conflict from him to that he might make a complete, unrestrained cross-examination should witness Taylor testify at trial. As Ethical Consideration 4-5 of the Code of Professional Responsibility states:

> A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes. Likewise, a lawyer should be diligent in his efforts to prevent the misuse of such information by his employees and associates. Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure.

It appears Attorney Gutkin received "the consent of his client after full disclosure." All of this he brought to the attention of the Court prior to trial. *See generally,* Testimony of Assistant District Attorney John C. Baer [Notes of Testimony, PCRA Hearing, November 6, 2013, pp. 10-13].[4] And his actions were shared with the defendant herein.

---

[4] More specifically, Attorney Baer testified as follows: "[T]he one conversation that I remember the most clearly – now, keep in mind, this has been since 2007 and I have literally tried 100 cases since then, so I am going to paraphrase and just recall to the best of my ability. But I know that Art [Attorney Gutkin] and I and Your Honor had a conversation, either in chambers or at sidebar, where any issues that were related to Art's representation of Tom, Art had discussed with his client John Taylor, and that Art had represented to the Court – perhaps you will recall this – that JT, Mr. Taylor rather, was okay with everything. I don't know if waiver of any conflict was the right word, but he was fully apprised of the situation and he was okay with Art proceeding representing him and cross-examining Tom Taylor." [Notes of Testimony, PCRA Hearing, November 6, 2013, pp. 11-12].

9

Upon these representations, the Court took no further inquiry or colloquy.

> Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. Indeed, as the Court noted in Holoway, supra, at 485-486, 98 S.Ct. at 1170, trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.

*Cuyler, supra,* 446 U.S. at 347.

Clearly, we could have easily made the record with a simple colloquy of the defendant. In hind sight, I would have. The defendant, although not denying that Attorney Gutkin informed him of the conflict issue, specifically claims he was not advised of the existence of the letters written by witness Taylor. We again did not hear from Attorney Gutkin, so we must take his representations as true.

Instructive in reviewing cases of counsel's zeal in cross-examination is *Commonwealth v. McCloy,* 393 Pa. Super. 217, 574 A.2d 86 (1990). Counsel therein was himself cooperating with federal authorities due to his own problems stemming from possible criminal charges of bribing a parole officer. Defendant in a state prosecution raised his counsel's conflict. Not only did the reviewing Court dismiss the claims, but further commented on the level of representation.

> Appellant has also failed to show that counsel's interest in cooperating with the federal authorities, in order to mitigate his own potential criminal liability for bribing a parole officer, had any adverse effect on counsel's ability to represent appellant effectively. Counsel testified at a post-trial evidentiary hearing that the F.B.I. had placed no restrictions upon his law practice and opined that the possibility of federal charges being brought against him, as well as his cooperation in the federal investigation, had had no effect on his representation of appellant at trial. Our own review of the record discloses that in all respects trial counsel provided a vigorous and skilled defense and made strategic and legal decisions which were reasonably calculated to serve appellant's interests.

*Id.* at 225, 574 A.2d at 90. Again, unfortunately the difference in the case at hand is we do not have counsel's testimony. However, the other aspects are similar. We find that throughout the

10

trial, defense counsel made legal and strategic decisions which were reasonably calculated to serve defendant Taylor's interest. For we must remember, Attorney Gutkin chose to terminate, distance his loyalties to witness Taylor in favor of defendant Taylor. It is important to keep in mind our faith in the decisions of counsel to treat privileged facts with proper esteem.

> The second factor is more difficult to assess. Cohen did advise the court that, as a result of that conversation with his partner, he was in possession of confidential information relevant to a possible cross-examination. Such information could create difficulties for the cross-examiner in two different ways. Most obviously, there might be a temptation to use the information to impeach the former client. We do not regard this risk as serious, however, for we think the courts can generally rely on the sound discretion of members of the bar to treat privileged information with appropriate respect. Moreover, in cases in which this concern does seem significant, it is the witness, rather than the defendant, who should object to the cross-examination by his former attorney. Here Berry asserted no claim of privilege and voiced no concern about Cohen's possible violation of his ethical responsibilities.

*Jeffers, supra,* 520 F.2d at 1265.

As here, witness Taylor asserted no claim of privilege nor voiced any concern about Attorney Gutkin's violation of his ethical duties. In fact, witness Taylor entered into a waiver of his privilege rights.

Herein, we find an actual conflict, direct and immediately diametrically opposed, existed during the critical stages of legal representation. That conflict was resolved, without adverse action to the defendant, during the time that existed during the stages of legal representation of the actual conflict. The termination and waiver freed defense counsel to vigorously and zealously represent his client, which the record bears out. Therefore, this Court dismisses the defendant's PCRA petition. This is as I take the law to be in Pennsylvania. But I could be in error. And this is why I have struggled with this matter for far too long. For I smell something not quite right. I am haunted that the stakes herein are much too high. Maybe I believe I am seeing ghosts, when they are in reality offset shadows. A mere blowing of wisps in the wind.

11

If the Court above is troubled by no trial court colloquy, then we should be reversed. *See Commonwealth v. Szekeresh*, 357 Pa. Super. 149, 515 A.2d 605 (1986) (defendant may waive conflict after being informed of specific risks involved in joint representation). Although Mr. Baer's testimony revealed discussions by Attorney Gutkin at the bench and representations purportedly made to his client, no separate inquiry was made. Should the Court above be troubled by Mr. Gutkin not having had the opportunity to testify, and the PCRA Court as well, to weight that testimony, then a simple remand for the taking of his testimony could suffice. If the Court above is troubled that we may never know of the true, conscious or subconscious, effects on zealousness of matters not known, not raised, it may wish to reconsider this Court's attempt to have these very unusual facts applied to case law, and grant a new trial.

> Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself. *Id.*, at 344, 83 S.Ct., at 796; *see Johnson v. Zerbst*, 304 U.S. 458, 467-468, 58 S.Ct., 1019, 1024, 82 L.Ed. 1461 (1938). When a State obtains a criminal conviction through such a trial, it is the State that unconstitutionally deprives the defendant of his liberty. *See Argersinger v. Hamlin, supra, at 29-33, 92 S.Ct., at 2008-2010.*

*Cuyler, supra,* 446 U.S. at 343. This Court is cognizant of the various case law interpreting our Constitutions (United States and Pennsylvania) that makes me vacillate between the relief sought by both parties.

> A Court may not countenance it and must, in the contrary, take effective actions just as we are certain the careful Judge below would have done had the facts been known at or before the commencement of the criminal trial. But where this has been allowed to occur, either through a calloused conscience of the attorney, or ignorance of the true facts by the Judge, the trial is not the fair one demanded by the Constitution. And this is so without regard to the presence or absence of any action of a strictly governmental nature which can be ascribed to the prosecution as the transgressing agency or imputed to the trial court on traditional notions of error on the Judge's part.

12

*Porter v. United States*, 298 F.2d 461, 464 (1962). In *Castillo v. Estelle*, 504 F.2d 1243 (1974), the Court notes on page 1245:

> The appellant has alleged specific instances of prejudice resulting from the conflicting loyalties of his counsel. We need not inquire into those allegations. When there is a conflict of interest such as exists in this case, the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty. Accordingly, where the conflict is real, as it is here, a denial of the right to effective representation exists, without a showing of specific prejudice.

*Id.* at 1245 (citations omitted).

Accordingly, by order filed simultaneously with this opinion, this Court warily dismisses John Junior Taylor's PCRA petition.

BY THE COURT:

Scott Arthur Evans, Judge

DATED: April 6, 2016

Distribution:
District Attorney's Office
The McShane Firm, LLC, 4807 Jonestown Rd., Ste. 148, Harrisburg, PA 17109
Chambers of Judge Scott Arthur Evans

13