518 A.2d 1258

## In the Interest of Lloyd SALADIN.

## Appeal of Lloyd SALADIN.

Superior Court of Pennsylvania.

Argued May 28, 1986.

Filed Dec. 17, 1986.

Laura Gardner Webster, Assistant Public Defender, Philadelphia, for appellant.

Before WIEAND, BECK and KELLY, JJ.

BECK, Judge:

At appellant's delinquency hearing, counsel for the juvenile advised the court that a conflict of interest prevented him from effectively cross-examining a prosecution witness. He orally moved to withdraw as counsel.

The issue before us is whether the trial court erred by insisting that counsel continue to represent appellant under these circumstances. We find that the trial court abused its discretion. We vacate judgment and remand for a new hearing.

I.

This case concerns the legal rights of two juveniles, the appellant Lloyd Saladin, and the prosecution witness, Lewis Williams. On October 15, 1985, Saladin allegedly threatened to cut Williams with a broken bottle unless Williams handed over his jacket. Saladin was charged with Robbery, Theft, and Possession of an Instrument of Crime. Brad Bridge of the Defender Association of Philadelphia was appointed counsel for Saladin, and an adjudicatory hearing was scheduled in the Philadelphia Court of Common Pleas.

On the morning of the hearing, Mr. Bridge informed the presiding judge that he had "a problem" with representing Saladin (N.T. 3/8/85 at 1).[1] He stated that in addition to representing Saladin, the Defender Association currently represented Williams in an unrelated criminal case that was

---

1. Although counsel never specifically stated that he was motioning to withdraw, he clearly communicated an intention to do so to the trial judge. Accordingly, we construe the exchanges between counsel and the court as a proper motion to withdraw. See *Commonwealth v. Person*, 345 Pa.Super. 341, 347, 498 A.2d 432, 435 (1985).

scheduled for trial the following day.[2] The judge expressed the view that Williams could simply waive any conflict of interest which resulted from this dual representation. The judge then called Williams' *mother* to the stand and asked her if she objected to the Public Defender's representation of her son. She said that she had no objection.

At the hearing, the Commonwealth called Williams as its sole witness. On direct examination, Williams testified that Saladin stole the coat. Mr. Bridge asked a few preliminary questions on cross, and then argued to the court as follows:

MR BRIDGE: Your Honor, based on an earlier problem that I have, that I know things about Mr. Williams—

THE COURT: He has no objection to you cross-examining about all his background. Go right ahead.

MR. BRIDGE: The problem is that I do, in that—

THE COURT: It has no other affect on him in his case for trial tomorrow, and he's waived any objection to you representing this man, so you can do everyhing you can to do to represent this defendant. He's waived all of that. Anything you may know about him, he's waived. You can tell me about all of his cases, if that is relevant.

MR. QUINN: [For the Commonwealth] I would be glad to ask him if Mr. Bridge is reluctant.

MR. BRIDGE: The only reluctance is because I only learned about him in the attorney-client relationship.

THE COURT: He's waived that. You are perfectly free to represent Mr. Saladin, and use any conversation that you may have to as to Mr. Williams' past problems. (N.T. 3/8/85 at 9–10)

Mr. Bridge continued to protest the court's decision. He concluded by stating:

2. The Assistant District Attorney later asserted that at the time of Saladin's hearing, the Defender Association had not formally been appointed to represent Lewis Williams in his upcoming case. However, the Assistant District Attorney conceded that the Defender Association had an extensive history of representing Williams. We conclude that both Saladin and Williams were clients of the Defender Association when Saladin's hearing took place.

MR. BRIDGE: Your Honor, I really, in good conscience, can't go further on the cross. I will rest. (N.T. 3/8/85 at 11)

The court adjudged Saladin delinquent and ordered him committed to a juvenile facility. At a post adjudication hearing, Bridge again stressed that in his capacity as an attorney with the Defender Association, he was privy to confidential information about Williams. In particular, he said the he had learned: (1) that Williams had been in a school for disturbed children, (2) that Williams had tried to bite off his own finger, and (3) that Williams had been committed to a mental hospital for three years prior to January, 1985. (N.T. 5/29/85 at 3–5). The court denied relief. This appeal followed.[3]

## II.

As this court noted in *Commonwealth v. Biancone*, 260 Pa.Super. 197, 200–201, 393 A.2d 1221, 1223 (1978), "[m]ost of the discussion of the subject of counsel's conflict of interest has arisen when the attorney has represented co-defendant[s] at the same trial." In the case sub judice, the conflict does not arise from counsel's representation of co-defendants but rather stems from counsel's representation of a criminal defendant and a complaining witness.[4] We hold that a conflict of interest may exist under these circumstances.

In *Commonwealth v. Westbrook*, 484 Pa. 534, 400 A.2d 160 (1979), the Court found that a conflict of interest may arise from the representation of individuals who are not

---

**3.** On appeal, Saladin contends: (1) that the trial court erred in failing to allow counsel to withdraw from representation, and (2) that counsel was ineffective for failing to fully cross-examine the complainant. We do not reach the second issue.

**4.** Although it is not clear if Mr. Bridge ever personally acted as an advocate for Lewis Williams, both Saladin and Williams were clients of the Defender Association. Even the representation of two clients by different attorneys employed by the same Defender Association constitutes dual representation for the purpose of conflict of interest analysis. *Commonwealth v. Evans*, 306 Pa.Super. 25, 451 A.2d 1373 (1982).

co-defendants. *See also Commonwealth v. Nicolella,* 307 Pa.Super. 96, 452 A.2d 1055 (1982). Moreover, many federal decisions specifically discuss the problem of witness-defendant conflicts. *United States v. Jeffers,* 520 F.2d 1256, 1264 (7th Cir.1975) states that "[i]n cases in which the alleged conflict of interest is based on the prior representation of a prosecution witness by defense counsel, the courts have examined the particular circumstances to determine whether counsel's undivided loyalties reside with his current client." *See Castillo v. Estelle,* 504 F.2d 1243 (5th Cir.1974) (reversing conviction where counsel had represented in civil litigation president of company which defendant allegedly robbed); *Brown v. United States,* 665 F.2d 271 (9th Cir.1982); *United States v. Winkle,* 722 F.2d 605 (10th Cir.1983). Accordingly, we must apply general conflict of interest principles to the facts before us.

## III.

▆ In *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court established a minimum standard for effective assistance of counsel. Under *Sullivan,* an appellant's conviction must be overturned once he demonstrates that "an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348, 100 S.Ct. at 1718.[5] In light of this rule, we proceed

5. In the instant case, appellant might prevail even if he could not satisfy the requirements of *Sullivan.* The true holding of *Sullivan* was that "*a defendant who raised no objection at trial* must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348, 100 S.Ct. at 1718 (emphasis added). Where, as here, appellant's attorney explicitly raised the conflict of interest issue at trial, it is up to the trial court to "take adequate steps to ascertain whether the risk [of a conflict] is too remote to warrant separate counsel." *Holloway v. Arkansas,* 435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). Unless the trial court fulfills this obligation, appellant's conviction must be overturned "whether [or not] the alleged conflict actually existed." *Sullivan* interpreting *Holloway,* 446 U.S. at 345, 100 S.Ct. at 1716.

Furthermore, several Pennsylvania cases indicate that an appellant need only demonstrate "potential harm" from a conflict of interest in order to win a new trial. *See Commonwealth v. Pinhas,* 496 Pa. 210, 214, 436 A.2d 618, 620 (1981) (Roberts, J., concurring). We need not

with a three part inquiry. First, did Bridge's association with Williams and Saladin pose an "actual conflict of interest"? Second, was this conflict of interest waived? Third, did the conflict of interest adversely affect Bridge's representation of Saladin?

## A.

We must first define "actual conflict of interest". The Pennsylvania Supreme Court has stated that a conflict of interest actually exists where appellant "has a defense inconsistent with that advanced by the other client, or ... counsel neglected his case in order to give the other client a more spirited defense." *Commonwealth v. Breaker*, 456 Pa. 341, 345, 318 A.2d 354, 356 (1974). In so stating, the Court was providing examples of actual conflicts of interest; it did not limit the definition to these two situations. 456 Pa. at 345 n. 2, 318 A.2d at 356 n. 2. The full meaning of "actual conflict of interest" is somewhat broader; such a conflict is evidenced whenever during the course of representation, the interests of appellant—and the interests of another client towards whom counsel bears obligations—diverge with respect to a material factual or legal issue or to a course of action. *See Sullivan v. Cuyler*, 723 F.2d 1077, 1086 (3rd Cir., 1983) (final determination following remand from Supreme Court).

In the case sub judice, Saladin's interest and Williams' interest diverged with respect to Bridge's cross-examination of Williams. Bridge had an obligation to Saladin to use all the information at his disposal to impeach Williams' credibility. Yet, Bridge also had an obligation to Williams to maintain the confidentiality of Williams' communications with the Defender Association.[6] Given these inconsistent duties, counsel was forced to make a "Hobson's choice".

determine the extent to which this standard differs from that of *Sullivan* or whether this standard is still the law of Pennsylvania.

6. We need not determine whether counsel breached his duty of confidentiality by describing Williams' mental problems to the judge during the post-adjudication hearing. *But see United States v. Jeffers, supra,* 520 F.2d at 1256 (counsel had responsibility to disclose confi-

One might argue that Bridge had a greater responsibility to Saladin than to Williams. Yet, the importance of maintaining client confidences cannot be lightly disregarded. *See Slater v. Rimar, Inc.,* 462 Pa. 138, 338 A.2d 584 (1975). Any statements Williams made to the Defender Association in connection with his legal representation were covered by the attorney-client privilege. *See Commonwealth v. Hutchinson,* 290 Pa.Super. 254, 434 A.2d 740 (1981). Moreover, a heightened concern for protecting confidences is particularly appropriate where a lawyer is called upon to cross-examine an individual whom his office represents. As Ethical Consideration 4–5 of the Code of Professional Responsibility states:

> A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes. Likewise, a lawyer should be diligent in his efforts to prevent the misuse of such information by his employees and associates. Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure.

 We find that counsel had a duty to protect Williams' rights as well as a duty to protect Saladin's rights.[7] Thus, an "actual conflict of interest" arose. *See*

dential data to trial judge when necessary for resolution of conflicts issue.)

7. *But see United States ex rel. Kachinski v. Cavell,* 453 F.2d 581 (3rd Cir., 1971). In *Kachinski,* the Third Circuit found that the prosecution witness had waived his attorney-client privilege as soon as he made a statement to the police concerning the defendant's crimes. Furthermore, the Third Circuit reasoned that once the privilege is waived, no ethical concerns should restrain defense counsel from fully cross-examining a client witness. We decline to apply such a rule in the case sub judice. Unlike the prosecution witness in *Kachinski,* Williams had an ongoing relationship with defense counsel's associates. Moreover, a thorough cross-examination would have probed intimate aspects of Williams' life—matters far beyond the scope of any statements Williams is likely to have made to police concerning Saladin's

*Ross v. Heyne*, 638 F.2d 979 (7th Cir.1980) (finding actual conflict where counsel had access to confidences of witness who was associate's client).

### B.

We now turn to consider whether the actual conflict between Saladin and Williams was somehow waived at trial. We find that there was no waiver.

At Saladin's hearing, the presiding judge apparently reasoned as follows. Counsel claims that he owes an obligation to defendant and an obligation to complainant. If complainant—through his mother—waives any rights he may have, counsel will be left owing a duty only to the defendant. Thus, any conflict of interest will disappear. *Compare United States ex rel. Kachinski v. Cavell, supra* at n. 4.

We need not decide whether a conflict of interest may ever be waived by a juvenile complainant or his mother. The fact remains that nothing occured at Saladin's hearing which was sufficient to waive Williams' rights. The presiding judge did no more than ask Williams' mother if she objected to dual representation.[8] He never explained that her son would be deprived of his attorney-client privilege or that her son might be vigorously cross-examined

alleged crimes. At least where these circumstances are present, we cannot conclude that a prosecution witness has automatically waived his attorney-client privilege.

8. THE COURT: The fact that the Public Defender may represent him sometime tomorrow in a case and is now today representing somebody that your son is testifying against, do you have any objection to him representing this man?
THE MOTHER: No, I don't.
THE COURT: Go ahead.
MR. BRIDGE: So that the record is abundantly—
THE COURT: The record is clear. We will proceed without further question. Thank you.
MR. BRIDGE: Over our objection.
THE COURT: Of course. (N.T. 3/8/85 at 4)

about his mental health. When a conflict of interest is imminent, courts are reluctant to recognize a waiver of rights in the absence of full disclosure. *See Pirillo v. Takiff,* 462 Pa. 511, 525, 341 A.2d 896, 902–903 (1975), aff'd on rehearing per curiam, 466 Pa. 187, 352 A.2d 11, cert. denied 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976); *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942). *Compare Commonwealth v. Szekeresh,* 357 Pa.Super. 149, 515 A.2d 605 (1986) (defendant may waive conflict after being informed of specific risks involved in joint representation). Here there was virtually no disclosure. Therefore, Williams' rights remained in force. Therefore, the actual conflict of interest between Williams and Saladin persisted.

## C.

■ Finally, it is clear that this actual conflict adversely affected the performance of Saladin's counsel. As a direct result of the conflict, counsel cut short a cross-examination of the only witness to testify against Saladin. In so doing, counsel lost the opportunity to expose the witness' mental problems and to attempt to discredit the witness' testimony on this basis.

Appellant has fully met his burden under the *Sullivan* standard. *Compare Commonwealth v. Buehl,* 510 Pa. 363, 379, 508 A.2d 1167, 1175 (1986); *Commonwealth v. Kelly,* 316 Pa.Super. 438, 463 A.2d 444 (1983); *Commonwealth v. Biancone, supra* (convictions affirmed in absence of evidence of adverse effects from alleged conflicts of interest).

Order reversed and case remanded for a new adjudicatory hearing. Jurisdiction is relinquished.