J-S54028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| M.A.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.D. | : | |
| | : | |
| Appellant | : | No. 644 MDA 2020 |

Appeal from the Order Entered March 19, 2020
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2019-41067

BEFORE: NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:             **FILED MARCH 24, 2021**

M.D. appeals from the Protection from Abuse ("PFA") order M.A.A. obtained against him. We affirm.

The facts and procedural history of the case are as follows. M.D. and M.A.A. were involved in a romantic relationship from approximately July 2017 until March 2019, when M.A.A. left M.D.'s residence. M.A.A. asserted that M.D. attempted to stop her from leaving the residence by physically blocking the door, but she was able to escape. Approximately four months later, M.A.A. filed a petition for a temporary PFA order against M.D., which the trial court granted. After numerous continuances, the court conducted hearings on March 6 and 19, 2020, and found the following facts:

> Prior to the filing of the Petition for PFA, [M.A.A.] stated that [M.D.] was consistently calling her on her personal and work telephone and showing up at her place of employment. [M.A.A.] stated that she would attempt to block his calls, but he would continue contacting her from different telephone numbers. [M.D.]

was also making threatening comments about her family and their businesses. As a result, [M.A.A.] hired an attorney to send a letter to [M.D.] indicating that if he did not stop abusing, harassing, stalking and/or threatening her that she would be required to file a Petition for PFA against him.

After receiving the letter, [M.D.] continued abusing, harassing, stalking and threatening her. [M.A.A.] testified that, on July 26, 2019, [M.D.] appeared uninvited outside of her place of employment. [M.A.A.] stepped outside to confront [M.D.] and asked him to leave. [M.A.A.] testified that [M.D.] began making threats and indicated that he was going to call her customers to tell them disparaging things about her company. [M.A.A.] further testified that she became frightened and asked him to leave numerous times, but he refused to do so until [M.A.A.'s] co-worker, Ken Scalpi, appeared.

[M.A.A.'s] co-worker, Susan Weigand (hereinafter "Ms. Weigand"), testified that she was aware of the relationship between [M.A.A.] and [M.D.]. Ms. Weigand indicated that, prior to the incident on July 26, 2019, [M.A.A.] has always expressed a concern for the safety of her co-workers as a result of [M.D.'s] behavior. Ms. Weigand further testified that, upon seeing [M.A.A.] and [M.D.] out front of the building on July 26, 2019, she asked Mr. Scalpi to go outside to diffuse the situation. Ms. Weigand then testified that she observed [M.A.A.] upset after returning to work.

In addition, Mr. Scalpi testified that [M.A.A.] appeared distressed when he went outside. He asked [M.D.] to leave the premises. Mr. Scalpi indicated that while [M.D.] was leaving, he stated, "I'll will (sic) find out where you live." Then, Mr. Scalpi testified that he saw [M.D.] pull into the parking lot in the back of the building and wrote down Mr. Scalpi's license plate while again stating, "I'll find out where you live." Ultimately, the Scranton Police were called to the scene. Mr. Scalpi went on to testify that [M.D.] drove past his house later that day.

Further, [M.A.A.'s] brother, Timothy Arcaro (hereinafter "Mr. Arcaro"), testified that [M.A.A.] stated on multiple occasions that she was afraid of [M.D.] and asked for his advice on how to get a PFA. Mr. Arcaro testified that [M.A.A.] confided in him about [M.D.'s] stalking and harassing behavior, and how she was afraid for her life and terrified that something bad would happen to her family as well as her co-workers.

Additionally, [M.A.A.] testified that on the next day, July 27, 2019, [M.D.] appeared unwelcomed in the backyard of her residence around 7:00 a.m. [M.A.A.] testified that [M.D.] stated, "It's over. It's on and it's over. The guy that you work with, "I'm burning his house down. I'm not going to burn his house down, but somebody is going to burn his house down and I'll make sure I'm at the casino playing the slots right in front of the cameral (*sic*) when it happens." [M.A.A.] testified that it became clear to her that [M.D.'s] behavior was out of control and that she feared for her life. [M.A.A.] then filed a Petition for PFA two (2) days later. [M.A.A.] testified that since the entry of the temporary PFA Order, [M.D.] has stopped abusing, harassing stalking and/or threatening her.

Tr. Ct. Pa.R.A.P. 1925(a) Op., 6/25/20, at 3-5 (citations omitted).

After the March PFA hearings, the court issued the instant PFA order against M.D. for a period of three years. M.D. filed a motion for reconsideration, which the trial court denied on April 21, 2020. The instant timely appeal followed. The trial court did not order M.D. to file a Pa.R.A.P. 1925(b) statement.

M.D. raises the following issues for review:

A. Was the evidence sufficient to grant a PFA Order against the [M.D.]?

B. Did the trial court commit an abuse of discretion [or] error of law when it declined to dismiss Attorney Mulligan from [M.A.A.'s] case?

C. Did the trial court commit an abuse of discretion [or] error of law when it permitted [M.A.A's] [] counsel [to] ask leading questions which presupposed abuse had occurred?

D. Did the trial court commit an abuse of discretion [or] error of law when it denied [M.D.] the ability to challenge [M.A.A.'s] credibility or her ability to accurately recall the incidents at issue by not permitting [M.D. to] cross examine [M.A.A.] about her use of prescription drugs to treat mental health issues?

- 3 -

E. Did the trial court commit an abuse of discretion [or] error of law when it permitted [M.A.A.'s] brother to testify to hearsay evidence and what amounted to expert opinion evidence?

M.D.'s Br. at 4-5.

On appeal from a PFA order, "we review a trial court's legal conclusions for an error of law or an abuse of discretion." *Mescanti v. Mescanti*, 956 A.2d 1017, 1019 (Pa.Super. 2008). An abuse of discretion occurs where there is "not merely an error of judgment, but where judgment is manifestly unreasonable, the law is not applied, or the record shows that the decision is a result of partiality, prejudice, bias, or ill will." *Id.* (citation omitted).

In his first issue, M.D. argues that the trial court erred by finding that the evidence was sufficient to issue a PFA order against him. He contends that M.A.A. never accused him of physical violence and failed to demonstrate that he placed her in reasonable fear of bodily injury. To this end, he asserts that M.A.A. admitted that she had met with him amicably during the time she alleged she was in fear of him. M.D. also points out that when M.A.A. left his residence in March 2019, she admitted that she left because he was arguing with another person on the phone, not yelling at her. M.D. likens this case to *D.H. v. B.O.*, 734 A.2d 409 (Pa.Super. 1999). In that case, this Court concluded that the evidence was insufficient to support the issuance of a PFA order where the alleged perpetrator had placed disturbing calls to the alleged victim's employer but never physically threated the alleged victim. *Id.* at 412.

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict-winner, and we give the party that prevailed below the benefit of all reasonable factual inferences. *Mescanti*, 956 A.2d at 1020. As the fact-finder in a PFA proceeding, the trial court is free to believe all, some, or none of the testimony presented. *Commonwealth v. Waugaman*, 167 A.3d 153, 156. (Pa.Super. 2017) (citation omitted). The fact-finder alone accesses the credibility of witnesses and the weight to accord their testimony. *Mescanti*, 956 A.2d at 1019-20.

A court may grant a PFA order to bring about a cessation of abuse to a plaintiff. 23 Pa.C.S.A. § 6108(a). A plaintiff seeking a PFA order must prove the allegation of abuse by a preponderance of the evidence. 23 Pa.C.S.A. § 6107(a); *see Raker v. Raker*, 847 A.2d 720, 724 (Pa.Super. 2004). The PFA Act defines abuse as:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> (3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).
>
> (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a).

In this case, the trial court concluded that sufficient evidence supported the instant PFA order because M.A.A. testified that M.D. had engaged in behavior "abusing, harassing, stalking and threatening her." Tr. Ct. Rule 1925(a) Op., at 3. M.A.A. stated that M.D. repeatedly made threatening comments to her in a multitude of phone calls to both her personal and work telephone numbers. Further, even after M.D. received a letter from M.A.A.'s attorney stating that if he did not stop the behavior M.A.A. would seek a PFA order, M.D. still persisted in repeatedly contacting M.A.A., culminating in both the July 26, 2019 incident at M.A.A.'s place of employment, and the July 27, 2020 incident at M.A.A.'s home. In addition, the trial court pointed out that other witnesses, including M.A.A.'s co-workers and M.A.A.'s brother, testified that M.A.A. had confided that she was terrified of M.D. and was afraid for her life.

We conclude that the trial court was well with in its purview when crediting the testimony of M.A.A. as well as that of her co-workers and her brother. **See Waugaman**, 167 A.3d at 155-56. Accordingly, we discern no abuse of discretion in the trial court's determination that M.D. placed M.A.A.

in reasonable fear of bodily injury and thus sufficient evidence supported the court's issuance of the instant PFA order. **See Mescanti**, 956 A.2d at 1020; 23 Pa.C.S.A. § 6102(a)(2), (5).

In his second issue, M.D. contends that the trial court erred by declining to remove M.A.A.'s counsel, Attorney Mulligan, from this case. M.D. avers that Attorney Mulligan should have been removed due to a conflict of interest. According to M.D., Attorney Mulligan sent him a solicitation by mail after the court entered the temporary PFA order. Thereafter, on the date of the initial hearing in this case, M.D. contends that Attorney Mulligan approached him in the hall prior to the start of the proceeding and failed to identify himself as M.A.A.'s counsel. Therefore, M.D. argues, he unwittingly believed that Attorney Mulligan was at the courthouse to represent him and he spoke to Attorney Mulligan about his defense strategy. Thus, M.D. maintains that the trial court abused its discretion by failing to remove Attorney Mulligan from the case.

Conversely, M.A.A. asserts that Attorney Mulligan did introduce himself to M.D. as M.A.A.'s counsel and merely asked M.D. if he had counsel. When M.D. indicated he was *pro se* and would be seeking a continuance, M.A.A. contends that Attorney Mulligan then indicated that he would inform his client and discussed nothing further about that case with M.D. Therefore, M.A.A. maintains that no relationship at all existed between her counsel, Attorney Mulligan, and M.D., let alone an attorney/client relationship. Therefore, M.A.A.

argues that the trial court properly declined to dismiss Attorney Mulligan from the case.

A court may disqualify an attorney from representing a party in a matter, due to an actual conflict of interest. An actual conflict of interest exists where "during the course of representation, the interests of appellant – and the interests of another client towards whom counsel bears obligations – diverge with respect to a material factual or legal issue or to a course of action." **Commonwealth v. Tedford**, 960 A.2d 1, 54 (Pa. 2008) (quoting **In Interest of Saladin**, 518 A.2d 1258, 1261 (Pa.Super. 1986)). Thus, disqualification for a conflict of interest entails showing multiple, conflicting attorney-client relationships. **See Dougherty v. Phila. Newspapers, LLC**, 85 A.3d 1082, 1087 (Pa. Super. 2014).

During the March 6, 2020 hearing, the trial court denied M.D.'s motion to dismiss Attorney Mulligan because the court did not find an attorney-client relationship between M.A.A.'s counsel and M.D.:

> THE COURT: Okay I heard enough. I'm going to deny your motion, [M.D.], I'll tell you why, I don't see the establishment of a lawyer/client relationship here.
>
> When people are called to this court for a PFA, it's very typical for people to have discussions out there to see if they can have the matter resolved.
>
> What I got here is a he said, she said type of situation, you said that he didn't initially announce his representation, and I'm hearing from counsel for [M.A.A.] that he did announce his representation, but in any event, there was no lawyer/client relationship.

> You asked him how much he was going to charge, and it's at that point when he told you that he's representing [M.A.A.].

N.T., 3/6/20, at 15-16.

The trial court did not abuse its discretion by concluding that M.D.'s testimony did not credibly establish that Attorney Mulligan formed an attorney/client relationship with M.D. This Court will not disturb the credibility determinations of the trial court, sitting as fact-finder. ***See Mescanti***, 956 A.2d at 1019-20. Accordingly, we conclude that the court properly found that a conflict of interest did not preclude Attorney Milligan's participation in this case. ***See Tedford***, 960 A.2d at 54. Thus, M.D.'s second issue lacks merit.

Turning to M.D.'s third issue, he claims that the trial court erred by allowing Attorney Mulligan to ask M.A.A. a leading question during the March 6, 2020 hearing. M.D. points to the following testimony:

> [Attorney Mulligan] Did he verbally abuse you?
>
> [M.D.]: Objection. Can you say how I abused her or how, like, was it, like, because she's --
>
> THE COURT: We're there, we're getting there.
>
> [M.D.]: Okay.
>
> BY [Attorney] MULLIGAN:
>
> Q. How did he verbally abuse you, [M.]?
>
> [M.D.]: He just led her into that, it was abuse. It was how did you abuse --
>
> THE COURT: Here we go. Okay, let's set the ground rules here.
>
> [M.D.]: I'm sorry, sir.

THE COURT: [M.D.], if you have an objection, you will raise an objection to the form of the question, but you're not permitted to go ahead and pontificate and give testimony until your time is up.

[M.D.]: I'm very sorry, I'm new to this. I'm just trying to fight, sir.

THE COURT: Go ahead.

BY [Attorney] MULLIGAN:

Q. [M.A.A.], how did he verbally abuse you?

[M.D.]: Objection. Can you please ask the question the right way and not lead her?

THE COURT: Overruled.

N.T. 3/6/20 at 23-24.

The Pennsylvania Rules of Evidence provide that "[l]eading questions should not be used on direct or redirect examination except as necessary to develop the witness's testimony." Pa.R.E. 611(c). A leading question is one that suggests the answer the questioner desires. *See Commonwealth v. Chambers*, 599 A.2d 630, 640 (Pa. 1991). However, "[t]he trial judge has wide discretion in controlling the use of leading questions. The court's tolerance or intolerance for leading questions will not be reversed on appeal absent an abuse of discretion." *Commonwealth v. Fransen*, 42 A.3d 1100, 1116 (Pa.Super. 2012) (*en banc*) (citation omitted).

In this case, upon review of the record, we discern no reversible error in the trial court's ruling. The thrust of M.A.A.'s claim in this case was M.D.'s alleged verbal abuse of her. The question at issue – "How did he abuse you?" – did not suggest the answer counsel wanted, in that it did not suggest "how"

the abuse occurred. At most, it suggested that verbal abuse had taken place, and M.A.A. had made such an allegation from the outset. Counsel evidently propounded the question to elicit from M.A.A. the precise verbal abuse M.A.A. contended M.D. had uttered. It was thus within the trial judge's discretion to allow the question to develop M.A.A.'s testimony. **See** Pa.R.E. 611(c). Moreover, even if the testimony were inadmissible, we presume the court ignored it. **See Commonwealth v. Fears**, 836 A.2d 52, 71 n.19 (Pa. 2003). Therefore, we conclude that M.D.'s third issue also does not warrant relief.

In his fourth issue, M.D. argues that the trial court abused its discretion by refusing to allow him to question M.A.A. regarding her alleged use of prescription medication. He claims that his attempt to raise M.A.A.'s alleged use of medication was a proper attempt to impeach her credibility. Therefore, he maintains that the trial court's determination that any cross-examination regarding M.A.A.'s use of prescription medication was not relevant was error.

"[T]he admissibility of evidence is a determination left to the sound discretion of the trial court, and it will not be overturned absent an abuse of discretion or misapplication of law." **In re Fiedler**, 132 A.3d 1010, 1025 (Pa.Super. 2016) (*en banc*) (internal quotation marks and citations omitted). Further, it is axiomatic that relevant evidence is generally admissible but may be excluded pursuant to another rule of law, such as where its probative value is outweighed by prejudice. **See** Pa.R.E. 402, 403. Relevant evidence is

evidence having "any tendency to make a fact more or less probable than it would be without the evidence." Pa.R.E. 401(a).

Impeachment evidence is "evidence offered to attack the character of a witness for truthfulness, evidence offered to attack the witness' credibility by proving bias, interest, or corruption, evidence offered to prove defects in the witness' perception or recollection, and evidence offered to contradict the witness' testimony." **In interest of M.M.**, 653 A.2d 1271, 1276 (Pa.Super. 1995) (citation and emphasis omitted). "[Q]uestions pertaining to the use of drugs and alcohol are proper when asked 'for the purpose of attacking the credibility of the witness by showing that *at the time of the event to which he testified* his powers of observation and memory were impaired, so that his recollection and account of the experience might be inaccurate." **Commonwealth v. Perdue,** 564 A.2d 489, 495 (Pa.Super. 1989) (citation omitted) (emphasis added).

In this case, the court precluded M.D.'s cross-examination regarding M.A.A.'s prescription medications by concluding that such information was not relevant as to M.A.A.'s petition for a PFA order against M.D. N.T., 3/19/20 at 55-56. We discern no abuse of discretion. M.D. failed to make any offer of proof or give any explanation of how M.A.A.'s purported use of prescription medication impaired her perception of M.A.A.'s actions at any relevant time. Accordingly, the court properly concluded that evidence of M.A.A.'s alleged use of prescription drugs was not relevant for impeachment purposes. **See**

**Perdue,** 564 A.2d at 495. Therefore, M.D.'s fourth issue also does not warrant relief.

In his final, thinly developed issue, M.D. claims that the trial court abused its discretion by allowing M.A.A.'s brother ("Brother") to testify to hearsay and to present evidence as a "quasi expert" because he is a family law attorney. While M.D. fails to cite to any legal authority in support of his claim, he does cite to the hearing testimony.[1] M.D. challenges Brother's testimony regarding confidences M.A.A. shared with him concerning her fear of M.D. and threats M.D. had allegedly made to her. N.T., 3/19/20 at 97-102. M.D. did make a timely hearsay objection, which the trial court sustained. **Id**. at 101. While M.D. admits that the court sustained his objection, he argues that the damage to his case had already been done. M.D. further maintains that the court erred by allowing Brother to testify to matters regarding domestic violence generally in a "quasi" expert manner. M.D. did lodge an objection to Brother's testimony in general due to his status as an attorney, which the court overruled. **Id.** 97-98.

_____

[1] We note that M.D.'s failure to cite any legal authority in support of his claim violates the Pennsylvania Rules of Appellate Procedure. **See** Pa.R.A.P. 2119; **Eichman v. McKeon**, 824 A.2d 305, 319 (Pa. Super. 2003) (citation omitted) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority"). Nevertheless, we decline to find waiver because our review has not been hampered.

As noted, the admission of evidence is within the sound discretion of the trial court. **See In re Fiedler**, 132 A.3d at 1025. Hearsay is "'a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.'" **Commonwealth v. Cunningham**, 805 A.2d 566, 572 (Pa.Super. 2002) (quoting Pa.R.E. 801(c)). Hearsay is inadmissible "except as provided by [the Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. We presume that a judge, sitting as finder of fact in a non-jury trial, has disregarded any inadmissible hearsay. **Commonwealth v. Dent**, 837 A.2d 571, 582 (Pa.Super. 2003)

Further, a lay witness may not testify based on scientific, technical, or other specialized knowledge beyond that of a layperson. **See** Pa.R.E. 701(c), 702. Nonetheless, "lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." **Commonwealth v. Berry**, 172 A.3d 1, 3-4 (Pa.Super. 2017). Moreover, "a judge, as fact finder, is presumed to disregard inadmissible evidence and consider only competent evidence." **Fears**, 836 A.2d at 71 n.19.

Here, the trial court sustained M.D.'s hearsay objection and is presumed to have disregarded any inadmissible hearsay. **See Dent**, 837 A.2d at 582. Hence, M.D.'s argument that the court abused its discretion by considering Brother's hearsay testimony must fail. Likewise, M.D. fails to develop how

Brother's status as a family law attorney rendered his opinion testimony regarding his own personal experience and his experience with his sister into impermissible scientific, technical, or otherwise specialized expert testimony under the Pennsylvania Rules of Evidence. **See Berry**, 172 A.3d at 3-4. Further, even if portions of Brother's testimony did impermissibly extend into areas of specialized expertise, the trial court, sitting as fact-finder, is presumed to disregard prejudicial, inadmissible evidence. **See Fears**, 836 A.2d at 71 n.19. Therefore, M.D.'s last issue is also devoid of merit. Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/24/2021

- 15 -