J-A06030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                       :  PENNSYLVANIA
                                                       :

          v.                               :

JAMES LUTHER KING            :

                 Appellant       :  No. 683 WDA 2020

Appeal from the PCRA Order Entered June 5, 2020
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000150-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:         **FILED:  November 5, 2021**

James Luther King appeals from the order, entered in the Court of Common Pleas of Clarion County, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Upon careful review, we reverse the PCRA court's order, vacate King's judgment of sentence in part, and remand for a new trial with respect to one alleged victim, A.B.

From approximately 2006 to 2015, King allegedly sexually assaulted five females ranging in age from 5 to 20 who, at some point, either lived with or frequently visited King and his paramour, Angela Crofutt.[1]  The victims

---

[1] Crofutt is A.B.'s cousin and the aunt of C.B. and K.B.  N.T. Jury Trial, 8/22/16, at 31, 77, 103.  A.K. met King and Crofutt when she started dating Crofutt's nephew.  *Id.* at 62-63.  M.P. met King and Crofutt after M.P.'s uncle began dating K.B.'s mother (Crofutt's sister), and M.P. also dated Crofutt's nephew. *Id.* at 46.

reported these crimes to the Pennsylvania State Police in December 2015. On February 22, 2016, the Commonwealth filed a criminal complaint in which it charged King with 35 counts of various sex offenses.

At his trial in August of 2016, King was represented by Scott White, Esquire. Unbeknownst to King, Attorney White had previously represented one of the alleged victims, A.B., in custody matters and in criminal proceedings which resulted in her 2015 *crimen falsi* conviction for retail theft.

At King's trial, the five victims testified as follows: C.B. alleged that when she lived with King starting around age 15, King made inappropriate, sexual comments towards her in person and via text message, told her that he had seen her naked and having sex with her boyfriend, exposed himself to her, and laid on top of her in bed unexpectedly. N.T. Jury Trial, 8/22/16, at 32-35. M.P. alleged that when she was around the age of 16, King grabbed her butt on two occasions, tried to touch her breasts, watched her exit the shower at one point, and laid beside her on her futon mattress unexpectedly. *Id.* at 44-51. A.K. alleged that, when she was 17, King made sexual comments towards her in person and via text message, offered her marijuana in exchange for sex, grabbed his clothed penis in front of her, touched her vagina while she was washing dishes, and touched her breasts while she was packing a vehicle. *Id.* at 61-67. K.B. alleged that, at some point between the ages of 6 and 13, King showed her a pornography video, exposed himself to her, "randomly" grabbed her butt and breasts, and smacked her vagina. *Id.* at 105-111. Finally, A.B. alleged that, on one occasion when she was

living with King around age 11 or 12, King "whipped out his penis and asked [her] to touch it," shoved ice down her shirt and pants, chased her into her bedroom, and penetrated her with his fingers and penis, stopping only when someone else entered their trailer. *Id.* at 80-85. King denied the allegations, explaining that they arose only after he "kicked the[ girls] out" of his home upon finding "drugs in [his] daughter's room." *See id.*, 8/23/16, at 23-36. Crofutt testified in King's defense. *See id.*, 8/22/16, at 157-78.

> On August 24, 2016, a jury found [King] guilty of 21 charges, including one count of rape by forcible compulsion, one count of rape of a child, four counts of corruption of minors, three counts of indecent assault of a complainant less than 13 years of age, three counts of indecent exposure, one count of disseminating explicit sexual material to a minor, five counts of indecent assault without the complainant's consent, one count of indecent assault by forcible compulsion, one count of indecent assault of a complainant less than 16 years of age, and one count of invasion of privacy. [Out of the 21 offenses for which King was found guilty, nine were alleged to have been committed against A.B., including, *inter alia*, the most serious offenses, rape of a child and rape by forcible compulsion.[2]]
>
> After [King's] convictions, the trial court, pursuant to the provisions of 42 Pa.C.S.A. § 9799.24, ordered the Pennsylvania Sexual Offenders Assessment Board (SOAB) to assess [King] to determine whether he was a Sexually Violent Predator (SVP). On April 7, 2017, the trial court held a hearing on [King's] SVP status, at the conclusion of which it found that the Commonwealth had proved its burden of establishing by clear and convincing evidence

---

[2] With respect to A.B., at criminal docket number CP-16-CR-0000150-2016, King was found guilty at Counts One (rape of a child), Two (corruption of minors), Three (corruption of minors), Seven (indecent assault against person less than 13 years of age), Twelve (indecent exposure), Fifteen (indecent assault without consent), Sixteen (indecent assault without consent), Seventeen (indecent assault without consent), and Twenty-one (indecent assault by forcible compulsion).

- 3 -

that [King] met all of the criteria of an SVP. On April 10, 2017, the trial court entered an order classifying [King] as an SVP.

On May 3, 2017, the trial court sentenced [King] to an aggregate term of 24 to 48 years of incarceration. [Specifically, the trial court sentenced King to a term of 240-480 months' imprisonment for the nine offenses against A.B., 14-28 months' imprisonment for the six offenses against K.B., 14-28 months' imprisonment for the two offenses against M.P., 14-28 months' imprisonment for the three offenses against A.K., and 6-12 months' imprisonment for the offense against C.B., to run consecutively to each other. The trial court awarded King 436 days of credit for time served.] The trial court's sentencing order [further] instructed [King] to register as an SVP pursuant to SORNA. [King] did not file any post-sentence motions or a direct appeal.

On September 28, 2017, [King] filed a *pro se* petition pursuant to the [PCRA]. The PCRA court appointed counsel and on January 31, 2018, [King] filed an amended PCRA petition. On April 9, 2018, the PCRA court entered an order granting [King's] PCRA petition, and reinstating his direct appeal rights *nunc pro tunc*. In the same order, the PCRA court appointed [c]ounsel to represent [King on] direct appeal. On May 7, 2018, [King] filed a timely notice of appeal from his judgment of sentence.

*Commonwealth v. King*, 2018 WL 6734646, at *1 (Pa. Super. filed Dec. 24, 2018) (unpublished memorandum decision) (footnotes omitted).

On direct appeal, counsel filed a brief pursuant to *Anders*/*Santiago*[3] and a petition to withdraw. Upon review of the record, this Court determined that King's appeal was not wholly frivolous; specifically, the Court denied counsel's petition to withdraw, vacated King's judgment of sentence to the extent it ordered him to register as an SVP, and remanded the case to the trial court for the sole purpose of issuing appropriate notice of King's tier–based registration period in light of *Commonwealth v. Butler*, 173 A.3d

_____

[3] *See Anders v. California*, 386 U.S. 738 (1967) and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

1212 (Pa. Super. 2017) (finding 42 Pa.C.S.A. § 9799.24(e)(3) unconstitutional and holding trial courts cannot designate convicted defendants SVPs nor hold SVP hearings; instead, trial courts must notify defendant that he or she is required to register for 15 years, 25 years, or life if he or she is convicted of a Tier I, Tier II, or Tier III sexual offense, respectively), ***rev'd in Commonwealth v. Butler***, 226 A.3d 972 (Pa. 2020) (holding registration, notification, and counseling requirements applicable to SVPs under section 9799.24(e)(3) constitutionally permissible).

On December 26, 2019, King filed a PCRA petition, raising claims of ineffectiveness of trial counsel. The court held two hearings, after which it dismissed King's petition by order dated June 3, 2020. This timely appeal follows, in which King raises the following claim for our review:

> Was trial counsel ineffective due to a conflict of interest whe[re] he represented the alleged victim in civil and criminal cases and failed to effectively cross[-]examine the alleged victim at trial, including but not limited to, regarding *crimen falsi* evidence [that] resulted from a conviction during his representation of the alleged victim in a recent criminal case, and[,] additionally[,] whe[re] said trial counsel failed to properly notify and inform [King] of the conflict of interest and [obtain King's] waiver, failed to prepare [King] to testify, failed to review evidence [and discovery] with [King,] and failed to withdraw from the case upon [King's] request.

Brief of Appellant, at 4.[4]

---

[4] King's statement of questions involved sets forth two nearly identical claims. Accordingly, we have combined them for purposes of our review.

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Hanible**, 30 A.3d 426, 438 (Pa. 2011). We view the findings of the PCRA court and the evidence of record in a light most favorable to the Commonwealth as the prevailing party. **Id.** "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013).

To be entitled to PCRA relief, a petitioner bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S.A. § 9543(a)(2), which include a violation of the Pennsylvania or United States Constitution or ineffectiveness of counsel, any one of which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i) and (ii). Counsel is presumed effective, and in order to overcome that presumption, a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner. **Commonwealth v. Fletcher**, 986 A.2d 759, 772 (Pa. 2009); **Commonwealth v. Natividad**, 938 A.2d 310, 321 (Pa. 2007). Failure to

- 6 -

establish any prong will defeat an ineffectiveness claim. **Strickland v. Washington**, 466 U.S. 668, 694 (1984); **Commonwealth v. Walker**, 36 A.3d 1, 7 (Pa. 2011).

Upon review, we find that King's claim of trial counsel's ineffectiveness—alleging that Attorney White failed to effectively defend him against A.B.'s accusations by impeaching her credibility with a *crimen falsi* conviction arising from his previous representation of her—has merit.

At the PCRA hearing, King testified that, at the time of his trial, he was not aware of Attorney White's previous representation of A.B. **See** N.T. PCRA Hearing, 3/13/20, at 4.[5] Attorney White testified that he informed King prior to his trial that he "represented [A.B.] in the past [] for a custody matter" but did not remember whether he informed King that he had represented A.B. in

_____

[5] King testified that he found out about the representation from a prison counselor and, thereafter, he attempted to terminate Attorney White's representation during a phone call. **Id.** at 6. **See** N.T. PCRA Hearing, 3/13/20, at 4. King claimed that Attorney White "wouldn't step down." **Id.** at 7. King testified that he wrote a letter to the trial judge, the Honorable James G. Arner, to advise him of counsel's conflict, but was told he "wasn't allowed to have direct communication" with the court. **Id.** King subsequently conceded that he may not have raised his concerns about Attorney White's alleged conflict in a letter to the court, but rather in a letter to the Disciplinary Board. **See id.** at 26. On cross-examination, counsel for the Commonwealth produced a copy of a letter King wrote to Judge Arner dated June 30, 2016, in which King raised concerns about several issues, but never mentioned the alleged conflict of interest. **See id.**, 5/20/20, at 32-33. Attorney White testified that he does not recall King's attempt to "fire" him over the phone and that, generally, he would immediately file a petition to withdraw if a client no longer wished for him to represent them. **Id.** at 30, 32.

any criminal matters.[6]  **See id.**, 5/20/20, at 6, 32.  Attorney White explained that he represented A.B. in drug-related matters in November of 2015, at which time she testified that "a lot of her drug addiction and mental health problems were rooted from the incident at hand."  **Id.** at 15-16.  Attorney White did not remember whether A.B. specifically named King as being responsible for her drug problems at that trial.  **Id.** at 16.  Attorney White further testified that he does not recall representing A.B. in connection with her guilty plea to retail theft on April 17, 2015, and that he did not believe his earlier representation of A.B. raised a conflict in King's case.  **Id.** at 16, 20. Attorney White did not obtain a written conflict waiver from King.  King notes, and Attorney White agreed at the PCRA hearing, that at King's trial:  (1) A.B. was the only witness to the alleged offenses against her; (2) the Commonwealth presented no scientific or physical evidence of the alleged offenses against her; (3) A.B.'s allegations were different from and more serious than those of the other alleged victims; (4) attacking A.B.'s credibility was counsel's ultimate trial strategy; and (5) the *crimen falsi* evidence was

---

[6] At the PCRA hearing, several exhibits were entered pertaining to Attorney White's representation of A.B.  **See** N.T. PCRA Hearing, 3/13/20, at 55-58 (discussing (1) order from A.B.'s plea hearing on November 23, 2015, for six separate criminal cases; (2) sentencing order dated December 21, 2015, for same criminal cases; (3) docket sheet from 2015 showing Attorney White as counsel for A.B.; (4) complaint for custody filed on behalf of A.B. by Attorney White on February 19, 2015; (5) Attorney White's motion to withdraw custody complaint on behalf of A.B., dated March 13, 2015; (6) trial counsel's complaint for custody dated July 15, 2015, filed on behalf of A.B.'s mother, Clarissa Rocher, during the time when trial counsel was representing A.B. in the criminal drug proceedings; and (7) consent order dated October 1, 2015, which includes custody provisions benefitting A.B.'s mother).

admissible to impeach A.B.'s credibility and, had it been admitted, the jury would have been instructed to give whatever weight to it that they chose. *Id.* at 20-25.

Here, where King did not knowingly and voluntarily waive counsel's potential conflict of interest,[7] the reliability of A.B.'s testimony was determinative of King's guilt or innocence, and King's trial counsel failed to impeach A.B. with evidence of a *crimen falsi* conviction that occurred when he represented her, we find that King's underlying claim of ineffectiveness has merit. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1241 (Pa. 2006) ("Impeachment evidence which goes to the credibility of a primary witness against the accused is critical evidence and is material to the case[.]"); *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (where identification was issue at trial, counsel's failure to pursue evidence which may have challenged victim's identification of appellant satisfied arguable merit prong of ineffectiveness claim).

Turning next to the second prong, it is well-settled that "[w]hen assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed

---

[7] *See In re Interest of Saladin*, 518 A.2d 1258, 1263 (Pa. Super. 1986) ("[w]hen a conflict of interest is imminent, courts are reluctant to recognize a waiver in the absence of full disclosure"); *Pirillo v. Takiff*, 341 A.2d 896, 902 (Pa. 1975) (waiver of potential conflict defective where client not fully and adequately informed as to nature of potential conflict).

to effectuate his client's interest." **Commonwealth v. Williams**, 141 A.3d 440, 463 (Pa. 2016). Here, Attorney White testified at the PCRA hearing that his defense strategy was to attack A.B.'s credibility. N.T. PCRA Hearing, 5/20/20, at 21-22. He further testified that he was "sure" he had searched for *crimen falsi* evidence against A.B., as it's "something that [he] typically do[es] in getting ready for criminal trials." **Id.** at 24-25. Attorney White acknowledged that he "could have" cross-examined A.B. regarding her *crimen falsi* conviction and "do[es]n't know why [he] didn't." **Id.** at 22. Accordingly, we find that counsel's failure to do so lacked a reasonable basis designed to effectuate King's interest. **Williams**, **supra**.

Finally, to demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. **See Strickland**, **supra** at 694; **Commonwealth v. Tedford**, 960 A.2d 1, 12 (Pa. 2008).[8] We note our

---

[8] King first alleges that trial counsel labored under a conflict of interest, amounting to "dual representation," as he had previously represented A.B. in prior criminal and custody proceedings. **See** Brief of Appellant, at 16. King submits that, accordingly, "the prejudice prong of the ineffective assistance of counsel analysis should not apply." **Id.** We disagree. It is well-settled that "[a] defendant cannot prevail on a conflict of interest claim absent a showing of actual prejudice." **Commonwealth v. Karenbauer**, 715 A.2d 1086, 1094 (Pa. 1998) (citing **Commonwealth v. Faulkner**, 595 A.2d 28, 38 (Pa. 1991)). Our Supreme Court reiterated in **Commonwealth v. Hawkins**, 787 A.2d 292 (Pa. 2001), that, while "it is true that prejudice is presumed when counsel is burdened by an actual conflict of interest, this is only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'" **Id.** at 297-98 (quoting **Commonwealth v. Buehl**, 508 A.2d
*(Footnote Continued Next Page)*

- 10 -

Supreme Court held in ***Commonwealth v. Small***, 980 A.2d 549 (Pa. 2009),

that "[e]vidence of a witness's conviction for a crime involving dishonesty or

a false statement is generally admissible. A failure to so impeach a key

witness is considered ineffectiveness in the absence of a reasonable strategic

basis for not impeaching." ***Id.*** at 565 (citing Pa.R.E. 609(a)).[9]

---

1167, 1175 (Pa. 1986)) (holding "[a]ppellant's defense was not prejudiced by the fact that, at a prior time, his counsel had represented a Commonwealth witness"). Furthermore, we agree with the PCRA court that this case involves successive and not dual representation. ***See Commonwealth v. Tharp***, 101 A.3d 736, 754 (Pa. 2014) (case involves successive and not dual representation unless, during course of counsel's representation, clients' interests diverge with respect to material factual or legal issue); ***see also In Interest of Saladin***, 518 A.2d 1258, 1259-60 (Pa. Super. 1986) (actual conflict of interest arose from dual representation where counsel represented defendant and simultaneously represented alleged victim, sole prosecution witness, in connection with unrelated trial scheduled for following day). In cases involving "successive and not dual representation, [an appellant] must demonstrate that he was prejudiced by any potential conflict of interest." ***Tharp***, ***supra*** at 754.

[9] In ***Small***, ***supra***, our Supreme Court held that the failure to impeach a witness with his *crimen falsi* conviction did not constitute ineffective assistance of counsel because his credibility had already been "assaulted to the nth degree." ***Id.*** at 560. Specifically,

> both of Small's counsel cross-examined [the witness] extensively, highlighting his numerous prior inconsistent statement and false statements to police. They cross-examined [the witness] about his history of drug and alcohol abuse, including on the night in question. Counsel exhaustively impeached [the witness] regarding his motive for testifying, and his plea agreement with the Commonwealth. Counsel made sure the jury heard [the witness] had been in jail twice between 1988 and 1989, and again in 1995; [he] admitted lying to police. Many of the conversations and letters about which he was questioned

*(Footnote Continued Next Page)*

King argues that he was prejudiced by counsel's performance where Attorney White "did not bring up *crimen falsi* evidence which was available to impeach A.B., even though . . . [Attorney White] had represented A.B. at [the] criminal proceeding creating [that] evidence[] just the year before[.]" Brief of Appellant, at 24. King further asserts that portions of Attorney White's cross-examination of A.B. were unhelpful to his case and, if anything, bolstered A.B.'s credibility while impugning King's character. Lastly, King argues that, because A.B.'s testimony was the only evidence that King assaulted her, A.B.'s credibility was the key issue in determining King's guilt or innocence, and counsel's failure to properly challenge that credibility "effectively resulted in a constructive denial of counsel for [King] at trial." ***Id.*** at 30.

In rejecting King's claims of prejudice, the PCRA court reasoned as follows:

> [] King has failed to demonstrate the requisite prejudice as he provides no nexus between attorney White's previous representation of [A.B.] and his performance at [King]'s trial. He offers no evidence that trial counsel restricted his cross-examination of [A.B.] because he was laboring under a conflict of interest. He has not referred to any part of the cross[-]examination as being insufficient or as showing favoritism to [A.B.]. Attorney White testified he did not know about the summary [r]etail [t]heft conviction or deliberately withhold

---

were from jail. . . . [H]e was depicted as a crook, a recidivist, a drug abuser, a drunkard, and an admitted liar.

***Id.*** at 565 (internal quotation marks omitted). Here, A.B.s credibility was not similarly assaulted. ***See*** N.T. Jury Trial, 8/22/16, at 94-101.

- 12 -

information when he cross-examined [A.B.].  Therefore, [King] is entitled to no relief.

Trial Court Opinion, 6/3/20, at 8.  We disagree.

In addition to arguing that he was prejudiced where Attorney White failed to impeach A.B. with the *crimen falsi* conviction, King points specifically to several portions of Attorney White's cross-examination as being insufficient and showing favoritism to A.B.  ***See*** Brief of Appellant, at 24-25.  First, where Attorney White brought up allegations that King offered A.B. methamphetamine in exchange for sex—which did not come up during direct examination—without follow-up questions regarding A.B.'s memory or motive for accusing King.  ***See*** N.T. Jury Trial, 8/22/16, at 97.[10]  King argues that this

_____

[10] This exchange occurred as follows:

[Attorney White]:  [I]sn't it true you . . . had frequent contact with [King]?

[A.B.]:      Yes, we did drugs together of course.

[Attorney White]:  In fact, you're claiming that he attempted to give you meth on one occasion?

[A.B.]:  Yes.

* * *

[Attorney White]:  So if he says hasn't done meth with you ever, that would be inaccurate?

[A.B.]:  Yes, that would be very inaccurate.

* * *

*(Footnote Continued Next Page)*

- 13 -

testimony tended to show that King was involved in drug use with a minor, impugning his character "and definitely not [A.B.]'s." Second, King suggests that Attorney White bolstered A.B.'s credibility by suggesting during cross-examination that A.B. did not disclose the rape to her mother or aunt because she didn't want her family to fight,[11] "which could then be accepted by the

---

[Attorney White]: **Did you ever say to** [**King**] if you could have some of his meth, **if he would give you some**[ meth], **you would** [**have sex with him**]?

[A.B.]: Yes.

[Attorney White]: **So** [**King**] **gave you meth, right?**

[A.B.]: No, **he didn't give it to me, he offered it, I turned it down.**

[Attorney White]: So you did it together?

[A.B.]: Yeah.

[Attorney White]: But it was always you providing it?

[A.B.]: Yeah.

N.T. Jury Trial, 8/22/16, at 95-100 (emphasis added).

[11] This exchange occurred as follows:

[Attorney White]: Did you ever tell Angela of this alleged rape?

[A.B.]: No.

[Attorney White]: You never told your biological mother and you never told Angela who was like a mother to you?

[A.B.]: No.

[Attorney White]: You didn't want to see the family fight—

*(Footnote Continued Next Page)*

jury as a logical reason to withhold the information." *Id.* at 25. Third, King submits that Attorney White "assisted [A.B.]" by "g[iving] her the opening to further make allegations against [King]" when he asked A.B. whether she felt "strange" around King and by concluding his cross-examination after soliciting prejudicial statements from A.B.[12]

_____

> [A.B.]: No.
>
> [Attorney White]: —was your reason for—
>
> [A.B.]: No. Yeah, I knew I would lose Angie.
>
> [Attorney White]: —for holding all this in? You were afraid you might lose Angie?
>
> [A.B.]: Yeah, this proves it, [`]cause I have. But today I'm stronger and I can deal with it[.]

N.T. Jury Trial, 8/22/16, at 100.

[12] This exchange occurred as follows:

> [Attorney White]: You never acted, you never felt strange around [King?]
>
> [A.B.]: Yeah, my boyfriends would feel strange with me around him. I wasn't allowed to wear shorts or nothing when I was around him [`]cause of the comments he would make to my boyfriend.
>
> [Attorney White]: What comments would that be?
>
> [A.B.]: That I have a nice ass, he would love to—he needed to watch me and all those other comments.

*(Footnote Continued Next Page)*

In sum, King alleges that he was prejudiced by Attorney White's conflict of interest where Attorney White failed to effectively attack A.B.'s credibility by, *inter alia*, failing to impeach her with evidence of her *crimen falsi* conviction. We need not address the prejudicial effect of each portion of challenged testimony. Because A.B's testimony was the only evidence of the alleged offenses against her, A.B.'s credibility was material to the issue of King's guilt or innocence. Counsel admitted his ultimate trial strategy was to attack A.B.'s credibility and that his failure to do so with *crimen falsi* evidence had no reasonable basis or strategic justification. In light of the foregoing, we conclude that King has shown a reasonable probability that, but for counsel's failure to impeach A.B. with evidence of her *crimen falsi* conviction, the

_____

> [Attorney White]: These are comments that revolved around you being inappropriately dressed?
>
> [A.B.]: No.
>
> [Attorney White]: So if [King] says that, then that would be inaccurate?
>
> [A.B.]: Yeah, he'd be talking about me and my ass and he liked me dressing in shorts.
>
> [Attorney White]: So he was looking after you, like an uncle would look after a niece?
>
> [A.B.]: No, uncles don't make inappropriate comments to their nieces.
>
> [Attorney White]: That's all I have, Your Honor.

N.T. Jury Trial, 8/22/16, at 101.

outcome of King's trial would have been different with regard to King's convictions for the offenses alleged by A.B. ***Small***, ***supra*** at 565 (failure to impeach material witness with *crimen falsi* evidence is ineffective assistance absent reasonable basis); ***see also Commonwealth v. Cole***, 227 A.3d 336 (Pa. Super. 2020) (holding defendant was prejudiced by counsel's failure to request jury instruction regarding impact that witness's *crimen falsi* offenses could have on jury's assessment of her credibility; PCRA court erred by rejecting defendant's claim that trial counsel acted ineffectively by not requesting said jury instruction).

Order reversed. Judgment of sentence vacated with respect to the nine offenses alleged by A.B. only. Remanded for a new trial with respect to A.B. only.

Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/5/2021